JACOB H. STUDER, Appellant, *v.* GEORGE BLEISTEIN, as President of the COURIER COMPANY, Respondent.

48 577
72 262

*Defective performance of a contract — effect of an acceptance of articles manufactured — a waiver of its requirements, as regards defects in a portion of the articles furnished thereunder, does not operate as a waiver of the defective execution of the balance of the contract — right of a party to a reasonable time to examine the articles manufactured.*

Where a party has become bound by an agreement to manufacture an article for another, of a specific description and quality, and it has been made different from the article agreed to be made, as to material and workmanship, if the party who is to receive it accepts it as a satisfactory performance of the contract, he cannot, after that, maintain an action to recover damages for the breach of the agreement, unless a warranty or a contract is made, intended to be obligatory after such acceptance, or the defects in the article are incapable of being discovered at the time.

The fact, however, that some of the articles made in disregard of the requirements of the agreement have been accepted by the party for whom they were made, does not justify the other party in constructing the rest of the articles in the same defective manner; as it does not follow, from the acceptance of a portion of the articles, that the party so accepting them consents to the residue of the articles being made in violation of the agreement, and with the same defects as those existing in the articles which he has already accepted.

The party, by accepting the defective articles first delivered, is not estopped from insisting afterwards, as to the residue of the articles, upon the performance of the contract, in accordance with the terms thereof.

Before a party can be concluded and be held to have accepted articles manufactured under a contract, he is entitled to an opportunity for their examination, and their acceptance if he concludes to receive them.

What circumstances are insufficient to afford a party such an opportunity for examination, considered by the court in this case.

Appeal from a judgment in favor of the defendant, entered in New York county on the report of a referee.

*Austen G. Fox*, for the appellant.

*Ansley Wilcox*, for the respondent.

Daniels, J.:

The plaintiff and Charles W. McCune, as president of the Courier Company, on the 25th of April, 1881, entered into the following agreement :

"JACOB H. STUDER, Esq., *Columbus, Ohio :*

"DEAR SIR. — We will furnish the press work and paper, 24x30, 60 lb. book tint No. 1, and tissue paper, and bind your work, "Birds of North America" in "American Russia," like sample furnished, at $4.55 each, you to furnish the plates and title page. Same in full morocco, at $5.35, ½ morocco, $2.85, cloth, $2.26. Any alterations in electrotype plates to be charged at 50c. per hour.

"THE COURIER CO.,

"C. W. McCUNE,

"*President.*"

This was modified on the 9th of January, 1882, in the following particulars :

BUFFALO, *January* 9, 1882.

In consideration of the promises and other valuable considerations, we agree to deliver 1,000 copies of your book, "Birds of North America," now being printed and bound by us, by May 15, 1882, the second thousand copies by November 1, 1882, the third thousand copies by December 20, 1882, the fourth thousand copies by May 1, 1883. All to be delivered sooner, if possible. Payments to be made in accordance with agreement made April 25, 1881. We agree, in case of failure to deliver, or being ready to deliver, the books at the above dates, to forfeit $250 per week for each week's delay in being ready to deliver the books, providential acts excepted.

To JACOB H. STUDER, Esq.

C. W. McCUNE,

*President.*

And a further agreement was at that time entered into by the president of the company, in its behalf, agreeing to take fifty copies of each of the 1,000 lots of "Birds of North America," which were to be printed and bound for the plaintiff, On his part it was alleged that the paper, style, and finish of the work were not in accordance with the obligations of the company, under the agreement, and he brought this action to recover damages claimed to have been sustained by reason of the failure of the defendant to fulfill the agreement as to the delivery of the first, second and third 1,000 volumes of the work. No claim was made in the complaint for any damages whatever, as to the non-performance of

the agreement, so far as it related to the fourth 1,000 volumes. And they, accordingly, were in no manner included in the litigation between these parties, but, under the allegations made in the complaint, it was necessarily confined to the three preceding installments of 1000 each. Evidence was given on behalf of the plaintiff to support the allegations contained in the complaint, that the defendant had failed to perform its agreement, and that the books were defectively bound, and that paper used in printing them was of an inferior quality to that contained in the sample mentioned in the agreement.

To answer this evidence testimony was produced on behalf of the defendant, which established the fact, to the satisfaction of the referee, that the first 1,000 volumes of the work was, in fact, accepted by the plaintiff. To prove such acceptance the testimony was ample which was produced before him, and to that extent certainly the plaintiff was precluded from recovering damages because of defects contained in the first 1,000 volumes. For where a party has become bound by an agreement to manufacture an article for another of a specified description and quality, and it has been made varying from the agreement as to material and workmanship, if the party who is to receive it accepts it as a satisfactory performance of the contract, he cannot after that maintain an action in his behalf to recover damages for the breach of the agreement, unless a warranty or contract is made intended to be obligatory after such acceptance, or the defects in the article are incapable of being discovered at the time. No such defects are alleged to have existed in the work performed by the defendant in printing and binding the books. Neither was any agreement made at the time, or preceding the acceptance, subjecting the defendant to any obligation whatever as to these 1,000 volumes that would survive or extend beyond the acceptance itself. Where a party entitled to the benefit of an agreement, as a matter of fact, actually accepts the article manufactured containing only obvious defects of the description of those complained of by the plaintiff, there his acceptance is a satisfaction of the obligations of the other party, and he can afterwards have no ground of complaint under the circumstances already mentioned. The law upon this subject has received frequent consideration, and this result is approved of and supported by the authorities. (*Dutchess Co.* v. *Harding,*

49 N. Y., 321 ; *McCormick* v. *Sarson*, 45 id., 265 ; *Fairbank Co.* v. *Metzger*, 43 Hun, 71 ; *Norton* v. *Dreyfuss*, 106 N. Y., 90 ; *Monitor Co.* v. *Remington*, 41 Hun, 218 ; *Cowles* v. *Michel*, 5 N. Y. State Rep., 427 ; *Coplay Iron Co.* v. *Pipe*, 13 id., 480.) As to this 1,000, therefore, the referee was right in rejecting the plaintiff's claim for damages.

He further found that the defendant, relying upon the plaintiff's acceptance of the first 1,000 books without objecting to the binding, proceeded to bind up the remaining 3,000 in a similar manner, and that they were bound as well as the first 1,000 books. And from that finding he appears, in some degree at least, to have derived the conclusion that the plaintiff was not entitled to maintain the action, and that the defendant had fulfilled its contract. But this conclusion by no means followed from the fact of the plaintiff's acceptance of the first 1,000 volumes of the books, for he did not consent in any form to the other installments of the books being bound in this manner, nor did he agree, if they should be, to receive them as a fulfilment or performance of the obligations of the contract. Objection had been made by him to the 1,000 books, but in looking them over afterwards the conclusion was reached upon his part, as the evidence warranted the referee in finding the fact, that they should be accepted by him, and they were so accepted. But what was said and done relating to the first 1,000 volumes was confined wholly to that installment of the books. It had no connection whatever with those which then had not been completed, and which were to be afterwards finished and delivered under the agreement in the future. Nor was any intimation or assurance in any form given by the plaintiff that he would accept or receive the other books still to be made or completed if they were made and finished the same as these 1,000 volumes had been. From these circumstances the defendant had no right to bind up the remaining 3,000 books in a similar manner upon the supposition that they would also be received and accepted by the plaintiff, if in doing so it failed to perform its agreement. That was the standard by which its obligation was to be measured, and a sample was delivered to it, indicating, under the agreement, what its obligations were in this respect. And to the contract which had been made, and not to the condition of these 1,000 volumes, the defendant was bound to look for the

purpose of ascertaining the performance which the plaintiff had the right to insist upon as to the remaining volumes to be printed, bound or delivered. In other words, the plaintiff did not place himself in any condition, by accepting the first 1,000 volumes, which would operate as an estoppel upon him, from insisting afterwards upon the performance of the stipulations contained in the contract, as that had been made between the parties.

A large number of authorities have been cited to support the position that there was an estoppel created by this acceptance of the first 1,000 volumes of the work, obligating the plaintiff to receive the second and third 1,000, as long as they were bound and made the same as the first 1,000; but neither of these authorities proceed so far as to justify the application of the doctrine of estoppel under these circumstances. What had taken place related wholly and exclusively to the 1,000 volumes completed and accepted by the plaintiff. Neither the acts nor the statements which were made bore any relation whatever to the second or third installments of 1,000 volumes each, which the plaintiff was to have under the agreement. And that distinguishes this case very manifestly from those which have been cited in support of this position by the defendant's counsel, for in the class of cases referred to the estoppel arose out of the acts, statements or conduct of the party directly affecting the precise subject-matter of the litigation, while here they had no such relation to so much of the subject in controversy as includes these second and third 1,000 volumes. What the plaintiff did was not calculated or designed to create the conviction that he would accept the remaining volumes, provided they were bound in the same manner as the first 1,000. All that he did was to accept the first 1,000, making no reference whatever to the remaining part of the agreement. For that reason the case has not been brought within the authorities defining and applying the principle of estoppel. In *Manufacturers, etc., Bank* v. *Hazard* (30 N. Y., 226), the rule applying the principle of estoppel was made to depend upon the performance of some act or conduct calculated to mislead, and actually misleading another acting upon it in good faith and exercising reasonable care and diligence under the circumstances. (Id., 230.) This was also the principle declared in *Carpenter* v. *Stilwell* (1 Kern., 61), where it was considered to be essential that the person to be

estopped should induce, by his assertion or conduct, the other party to do that which would be prejudicial to his interest if the person by whom he had been induced to act was allowed to contradict. or disprove what he had affirmed. (Id., 73). *Railway Company* v. *McCarthy* (96 U. S., 258), and *Boardman* v. *Lake Shore, etc., Railway Company* (84 N. Y., 157, 182), were decided upon the same understanding of the law. And the principle maintained by them fails to include or support this conclusion of the referee, for the reason that no words, act or conduct of the plaintiff in the acceptance of the first 1,000 volumes, by any construction whatever, can be held to have related to those not at the time finished or completed. And the cases of *Blair* v. *Wait* (69 N. Y., 113); *Kipp* v. *Meyer* (5 Hun, 111), and *Pierson* v. *Crooks* (42 id., 571), also sanction and support the legal principle that the acceptance of a separate and distinct. part of the articles to be manufactured and delivered under an agreement, when that part has been defectively made or constructed, will not relieve the other party from the obligation to fulfill the terms of his contract in the quality and description of the articles still to be manufactured or delivered. If the application of the law of estoppel could be made to the residue by reason of the acceptance of a defective part of the articles to be delivered, then these cases. would not have been decided and determined upon the assumed existence of the legal principle which has just been mentioned. They are, therefore, decisive authorities against the application of the principle of estoppel arising upon the state of facts presented by this action ; and, so far as the judgment may have been produced or resulted from the misapplication of this rule of law, it is erroneous and cannot be sustained.

The referee, however, did not dispose of the case solely and wholly upon the effect of this finding of fact, but he further found as a fact, that the second and third thousands of the books were in, fact, accepted by the plaintiff, and from that acceptance he had precluded himself from making any further complaint, for the reason that there were no latent defects or imperfections in the bindings or in any part of the books. These books were completed in November and December, 1882, and the referee further found that all the books were defectively bound, and that their value was diminished by reason of that defective binding. These conclusions.

are not harmonious with that declaratory of the fact that the defendant had fulfilled its contract with the plaintiff, for they established the conclusion that it had not performed its agreement with the plaintiff, and he has the right to stand upon these conclusions to maintain the appeal he has taken from the judgment in this instance. They are the most favorable to his case, and it has been held that the party complaining of a judgment may rely upon the findings of fact which are most beneficial to himself. (*Schwinger* v. *Raymond,* 83 N. Y., 192.) And he can only be deprived of that right when the conclusions, having an apparent conflict, are capable of being reconciled and harmonized. (*Health Department,* etc. v. *Purdon,* 99 N. Y., 237.) These variant conclusions of the referee are not susceptible of being harmonized in this manner, but an irreconcilable conflict exists between the two, and the plaintiff is entitled, under this rule, to the benefit of the fact that all the books were defectively bound and their value was in that manner diminished. In this way it appears that the defendant did not perform its agreement, and the conclusion of the referee that the plaintiff could not maintain the action must rest in a great degree upon the further finding that the plaintiff accepted the second and third 1,000 of the books.

Out of the second and third installments the defendant reserved the fifty volumes it had agreed to take, and the account presented and proved showed that, in all, but eighty-two volumes had been in any form reserved or delivered from the second 1000 volumes. Fifty of these were taken by the defendant, leaving the remaining thirty-two volumes as the whole number either received or disposed of by the plaintiff. At least twenty-five of these volumes were sent, under his direction, to a firm doing business in the city of Montreal, and they appear to have been shipped to that firm by the defendant without any inspection or examination of the books by the plaintiff. What became of the residue does not clearly or distinctly appear. Neither does it appear that the plaintiff made any inspection or examination of these books, or in any manner approved of their manufacture and binding. And before he could be concluded and held to have accepted them he was entitled to an opportunity for their examination, and their acceptance, if he concluded to receive them. (*Messmore* v. *N. Y. Shot and Lead Co.,* 40 N.Y., 422;

*Grimoldby* v. *Wells*, Law. Rep., 10 C. P., 391; *Rust* v. *Eckler*, 41 N. Y., 488.) And while that opportunity may have been afforded to him by the circumstance of the books having been completed and bound, he does not personally appear to have been placed in a situation where he could, or did, make any such examination as would conclude him, or from which it could be inferred that he accepted these books. As to the third 1000 the proof is still more slight. Of those the defendant retained fifty volumes. It sent, under the orders of the plaintiff, 175 volumes to the same firm in Montreal and the remaining volume is stated, by the witness Gethoefer, to have been specially bound in half Russia leather, as a sample, and another volume was delivered to the plaintiff unbound. The 175 volumes sent to the Montreal firm were not accepted by it, but were left in the custody of the carrier to which they had been delivered by the defendant. And after the refusal by that firm to accept the books had become known to the plaintiff, he directed the defendant to secure their return and change the title page by omitting from it the name of the Montreal firm. What was finally done concerning these books does not appear by the evidence, but in February, 1883, and soon after the fact had become known that the Montreal firm refused to receive the 175 volumes, the plaintiff wrote to Mr. McCune, who was then the president of the Courier Company, offering to take the books and pay the contract-price, subject to his right to such damages as he might sustain by reason of inferior quality of paper, or imperfection in the execution of the work, or any breach of contract on the part of the defendant. And he further informed them, under date of the fifteenth of February, that he had always been ready to comply with his contract and take and pay for the books, but none of them, so far as he had been able to examine them, had been made in compliance with the contract, and he then repeated the same offer contained in his preceding letter of the same date. This was declined by the defendant, and the business remained substantially in that condition at the time when this action was commenced.

From these facts, with the additional circumstance that he had previously advertised his books for sale, it is entirely clear that nothing whatever had transpired from which the conclusion could be drawn that the plaintiff accepted the third 1,000 volumes of the

books. No examination of them had taken place resulting in any satisfactory conclusion concerning them by the plaintiff. Neither were any of the volumes received by him, or disposed of under his direction or authority, from which an acceptance might be inferred. But his letters of the fifteenth of February evince the determination and intention to have been that neither the second nor third 1,000 volumes was intended to be accepted, but, on the contrary, he rejected them, unless the defendant would agree to the qualified delivery, suggested by him, allowing his right to damages to continue after the delivery and receipt of the books.

It is true, as the rule was held and applied in *Meincke* v. *Falk* (61 Wis., 623) and *Nolan* v. *Whitney* (88 N. Y., 648), that an entirely literal performance of the agreement, on the part of the defendant, could not be exacted by the plaintiff. What the law requires is a substantial performance, as near as may be reasonably practical, considering the nature and description of the work to be done. But that does not appear to have taken place in this instance, for it was not proved to have been impractical to avoid the defect found by the referee in the binding of the volumes. And as long as they were defectively bound, and diminished in value by that circumstance, and were not accepted by the plaintiff, he was entitled to some allowance by way of damages to indemnify him against the loss occasioned by this defect.

What that should be is not now a subject for consideration, the case being presented solely upon the legal rights of the parties as to the facts of performance and acceptance, and the testimony relating to the question of damages having been omitted from the printed case.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and BRADY, J., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.