# THE

# New York Supplement.

## VOLUME III.

BLEISTEIN *v.* STUDER.

(*Superior Court of Buffalo, General Term.* December 3, 1888.)

1. SALE—ACTION FOR PRICE—MANUFACTURED GOODS—SAMPLE—FINDING OF REFEREE.
   In an action for the price of printing and binding certain books, the pleadings did not allege that the work was to equal a sample, defendant testified that he had furnished no sample, and the case was tried on the theory that there was none. By the written contract plaintiff agreed to bind the books "like the sample furnished." The referee found that the plaintiff had fully performed his contract, but that the books were defectively bound, which diminished their value, but did not find that they were inferior to any sample. *Held*, that the finding of compliance with the contract, in view of the pleadings and the theory of the trial, was consistent with the written contract, and hence not opposed to the evidence.

2. SAME—INCONSISTENT FINDINGS.
   The finding that the books were defectively bound, which diminished their value, is not necessarily inconsistent with the findings that plaintiff had complied with his contract, and the further finding that the bindings, though imperfect, were fairly good and merchantable, as the defects might have been so slight that the contract was complied with, which, under the pleadings, would be done by furnishing books of medium quality, suitable for the purpose intended.

3. SAME—INSTALLMENT DELIVERY—WHEN PRICE BECOMES DUE.
   Such a contract, providing for a delivery by installments at various times during about a year, payment to be made 30 days "after delivery of the books, bound and complete," is an entirety, and the price is not due until 30 days after all the books are delivered, from which time interest should be computed.

Appeal from judgment on report of a referee.

Action by George Bleistein, president of the Courier Company, against Jacob H. Studer, for printing and binding certain books. Judgment for plaintiff, and defendant appeals.

*Austin G. Fox* and *Wallace Macfarlane,* for appellant. *Ansley Wilcox,* for respondent.

HATCH, J. The plaintiff by this action seeks to recover of the defendant the contract price for printing and binding 4,000 volumes of a book called "Studer's Birds of North America." The complaint alleges "that heretofore, and on or about the 25th day of April, 1881, the plaintiff made a contract, in writing, with the defendant, in and by which the plaintiff agreed to furnish the press-work and paper, and to bind, a certain book of publications to be known as 'Studer's Birds of North America,' at and for the following rates and prices, to be paid by the defendant, to-wit: If bound in American Russia leather, at the rate of $4.55 each; if bound in full morocco, at the rate of $5.85 each; if bound in half morocco, at the rate of $2.35 each; and if bound in

cloth, at the rate of $2.26 each; and the defendant, on or about the said day, accepted the said contract, and undertook and agreed to pay the said amounts, and at the rates therein specified. And it was further agreed between the said parties that the number of said books to be so prepared and published by the plaintiff should be four thousand." The complaint further alleged a subsequent modification of this agreement, in some respects, not material to the questions presented by this appeal; then alleges performance of the contract, and a refusal upon the part of the defendant to receive and pay for said books; and demands judgment. The defendant, answering, admits the contract to be substantially as set out in the complaint, except that he denies that the number of books to be furnished was 4,000. He further admits the refusal to receive or pay for said books, and alleges a failure to fulfill the contract upon the part of the plaintiff, and demands judgment that the complaint be dismissed. Evidence was given upon the trial tending to prove that the plaintiff had in all respects performed his agreement to print and bind the 4,000 volumes, and the referee found, as a conclusion of law, that the plaintiff has fulfilled his contract with the defendant. This finding is now attacked by the defendant as not being warranted by the evidence. The basis of this claim rests upon the contract proved upon the trial, in and by which appears the clause, "And bind your work 'Birds of North America' in American Russia, like sample furnished." And also upon two further findings made by the referee upon request of the defendant, as follows: "That said four thousand books were defectively bound;" "that the value of said books, by reason of said defective binding, was diminished." The claim of defendant, in brief, is that the contract contemplated that said books should be bound according to a sample furnished, and that it could not be satisfied with anything short of equality with the sample; and that the referee, having found that the books were defectively bound, must mean that they were not as well bound as the sample; and that, when he found that their value was diminished, he meant that they were less valuable than the sample; that this construction of the contract, and the findings, is in direct conflict with the finding of the referee that the contract was performed, and, being more favorable to the defendant, the former finding must fall, leaving nothing to support the judgment.

This contention ignores the pleadings and the theory of the trial. As we have seen, the pleadings show, by allegation and admission, a contract to print and bind 4,000 books in various styles of binding. There is no allegation or claim that they were to be according to any sample or particular standard of excellence. The contract and the law were therefore satisfied when the plaintiff produced a book of medium quality and goodness, suitable and proper for the purpose intended. *Hargous* v. *Stone*, 5 N. Y. 73–86; *Manufacturing Co.* v. *Allen*, 53 N. Y. 515. This was also the theory of the trial, as developed by the testimony. The defendant, who was sworn in his own behalf, testified repeatedly, both upon his direct and cross examination, that there was never any sample book furnished by him, or other sample of bindings whatsoever. There was a book which was referred to upon the trial as Exhibit No. 5, and which plaintiff's testimony tended to show was a sample for bindings; but the defendant expressly contradicted that testimony, and testified that it was a book which he had previously sold to one Maerz, and that he never referred to it as a sample, or recognized it as such, but, on the contrary, expressly repudiated it. The referee found that the only sample of American Russia leather binding furnished by the defendant to the plaintiff was the book Exhibit No. 5, and to this finding the defendant excepted; thus conclusively showing that upon the trial, and after judgment, the position of the defendant was that the books were not bound with respect to any sample. So far as the evidence tended to show any comparison between the books bound by the plaintiff and Exhibit 5, it rested in the testimony of the witness Johnson; and a careful examination of his testimony shows that while he tes-

tified that the books bound by plaintiff were defectively bound, yet the same defects which he pointed out he also found to exist in Exhibit 5, and from his whole testimony it would hardly have supported a finding that plaintiff's books fell below any standard established by Exhibit 5.   The referee was not asked and has not found that, measured by the standard of Exhibit 5, the books were defectively bound, or that their value fell below it.   So that in the disposition of this case the measure of plaintiff's obligation is found in the contract as set out in the complaint, admitted by the answer, and claimed upon the trial. This did not require that he furnish a book bound in the highest degree of perfection, but that he furnish a book which was in all respects a substantial compliance with the contract.   When he has done that, he has fulfilled the contract, although there may be some trivial defects.   *Nolan* v. *Whitney*, 88 N. Y. 648; *Woodard* v. *Fuller*, 80 N. Y. 312.

The referee also found that the bindings of the books, although imperfect, were fairly good bindings, and were in fact merchantable.   The evidence was ample to sustain this finding, and we think such fact satisfies the rule of law as to the performance of the contract.   It is, however, earnestly contended that the findings of the referee are inconsistent, and we are cited to the case of *Studer* v. *Bleistein*, 48 Hun, 577, 1 N. Y. Supp. 190, to sustain such position. · This was an action for damages growing out of the contract between these parties.   It does not appear what the pleadings were in that action, nor does it appear what the theory of defendant was upon the trial; but from the report of.the case it does appear that the court assumed that the books were to be bound according to a certain standard of excellence, furnished by a sample, and, the referee having found that the bindings were not in accordance with the sample, but were. inferior thereto, that the contract was not performed, and the referee erred in dismissing the complaint.   As we have seen, that case differs from the present in the fact that here no standard of excellence was alleged or claimed either in the pleadings or upon the trial.   It is true that the findings of the referee which were the subject of construction there are the same here, but with respect to the contract itself there is an essential difference.   Defendant is entitled to rely upon the findings of the referee which are most favorable to himself.   *Schwinger* v. *Raymond*, 83 N. Y. 193.   Nevertheless it is the duty of the court, if possible, to harmonize the findings, and give to them the meaning which the referee intended.   *Redfield* v. *Redfield*, 18 N. E. Rep. 373; *Bennett* v. *Bates*, 94 N. Y. 354.   Applying that rule here, we think that the findings of the referee are susceptible of a harmonious construction.   The referee first found that the plaintiff had fulfilled his contract.   He then found, upon request of defendant, that the books were defectively bound, and that their value was diminished, and then found that notwithstanding the defects they were fairly good bindings, and in fact merchantable.   All of this might be true.   It will be noticed that the language of defendant's request in the *McCune Case*,[1] argued with this, included the word "greatly" before diminished; and it is stated upon the argument that the word "greatly" was stricken out by the referee before he made the finding in this action.   Such fact would have great weight in determining the intention of the referee, but, however that may be, under the rule laid down, it seems clear that these findings may be harmonized.   The books may have been defectively bound in small and trivial particulars, or their value may have been slightly diminished, and still neither the one nor the other be of such a character as to substantially change them from the requirements of the contract.   In *Health Department* v. *Purdon*, 99 N. Y. 237, 1 N. E. Rep. 687, the action was to obtain an injunction restraining defendant from continuing a claimed nuisance in selling certain teas.   The court found that the teas in question contained noxious and offensive drugs and substances, but that they

[1] No opinion.

were not a nuisance. The claim was that the finding was inconsistent with the conclusion. The court say: "It is quite possible that the substance found in the teas in question did not exist in such proportions or quantities as rendered their use necessarily dangerous or unwholesome to human health or life, even though some of them were in their nature deleterious and unhealthy, and might under certain circumstances, and if absorbed into the system in sufficient quantities, be both unwholesome and dangerous." 99 N. Y. 243, 1 N. E. Rep. 689. The principle of that decision is conclusive here. The four findings, taken together, we think, may be construed to mean that the contract was performed in all substantial particulars; that while the books were not perfectly bound, and in a sense defectively, whereby their value was diminished, yet as a whole they were fairly good bindings, and as such merchantable for the purpose intended. This, as we have already seen, is within the established rule of law governing the obligation imposed by such contract.

It is also claimed that the contract between these parties, so far as it relates to payment for the books, is an entire contract, and that full performance is a condition precedent to the right to demand pay, and the referee, having given judgment for each installment of books, with interest, has committed error. All of the contracts executed by McCune individually, and by the Courier Company, relate to each other, and are to be construed together. The first, under date of April 25, 1881, executed by McCune, provided: "I will get you out an edition of four thousand of each plate of your work 'Birds of North America.' * * * The order for plates in lots of not less than four thousand of each plate, one hundred and nineteen colored plates, price per thousand, nineteen dollars. Whole number of plates from one to one hundred and nineteen, inclusive, making four hundred and seventy-six thousand, to cost nine thousand and forty-four dollars, to be paid for, cash in thirty days after the delivery of the books, bound and complete." Upon the same date the Courier Company, by McCune, as president, executed the contract set out in the complaint, which makes no provision for payment. These contracts not having been performed, the defendant, by letter, under date of January 6, 1882, gave notice of termination. Subsequently, on January 9, 1882, a new contract was made, in and by which plaintiff agreed to deliver the 4,000 books in installments of 1,000 each, on May 15, 1882, November 1, 1882, December 20, 1882, and May 1, 1883, respectively, "payments to be made in accordance with agreement made April 25, 1881." It is thus seen that the new contract made no change from the method or time of payment provided for in the old, but expressly incorporates that portion of the old into the new. It also appears that no provision for payment was made in the first Courier contract, but it is incorporated in the McCune contract, and that provided for payment upon the delivery of the books bound and complete, and the edition referred to was one of 4,000. We think that these contracts are to be treated as entire; that a delivery of the whole 4,000 was a condition precedent to the right to demand payment. *Mount* v. *Lyon*, 49 N. Y. 552; *Baker* v. *Higgins*, 21 N. Y. 397; *Catlin* v. *Tobias*, 26 N. Y. 217; *Avery* v. *Willson*, 81 N. Y. 341. It follows from this view that the judgment should be modified by awarding a recovery for the contract price of the books, with interest thereon from the 1st day of June, 1883, and, as so modified, the judgment is affirmed, without costs to either party. All concur.