JACOB H. STUDER, Appellant, *v.* GEORGE BLEISTEIN et al., as Executors, etc., Respondents.

A deliberate and intentional acceptance by the vendee, of personal property manufactured under an executory contract of sale, after a full and fair opportunity of inspection, in the absence of fraud, estops him from thereafter claiming damages for any visible or discernible defects and imperfections, whether discovered or not, unless there is some warranty of quality on the part of the vendor manifestly intended to survive acceptance.

*It seems* that a warranty, even in an executed contract, does not extend to known defects.

Fraud, in respect to the quality and condition of property sold, cannot be predicated of defects which were visible and known to the party alleged to have been defrauded.

McC., defendants' testator, contracted with plaintiff to furnish certain lithographic plates for a book, the paper to be "best eastern plate paper, equal to sample furnished," the color plates to be "correct in every detail, * * * and in the general design and effect as in the color plates furnished by" plaintiff. When completed the plates were to be delivered to a third party to print and bind. McC. procured the paper from the makers of the best eastern plate paper. This was objected to by plaintiff, and thereupon McC. procured other paper from the same manufacturers. This paper plaintiff frequently saw during the progress of the work and raised no objection thereto. When the first sets of plates were finished and bound plaintiff was invited to inspect them with a view to their acceptance by him. He claimed certain defects, which were remediable. McC. agreed to perfect them, to which plaintiff assented. When the other sets required to complete the contract were ready plaintiff was asked to examine them, and after full opportunity so to do he accepted them, and they were, with his knowledge and consent, delivered to the printer. Soon after plaintiff examined the first sets which had been repaired, and after a thorough inspection accepted them, and the whole edition was printed upon the same quality of paper. Plaintiff also made sales of the books. In an action to recover damages for an alleged breach of the contract, the referee found that there was no latent defects or imperfections, and that every difference between the plates and the original sketches furnished by plaintiff were discernible on inspection and comparison; that the paper furnished was not "best eastern plate paper," but was equal to "sample furnished;" also that the best plate paper was especially adapted to printing steel plate engravings, and was not the best plate paper for printing colored lithographs, and that the paper used was the best plate paper for that purpose. *Held*, that the paper furnished was a compliance with the meaning and intent of the contract.

The referee also found that the plates were not correct in every detail, and were not such a reproduction of the original sketches as were required by the contract, and "were not fair or good representations." *Held*, that the referee properly decided that the acceptance of the plates by plaintiff precluded him from raising any objections to defects that were visible and capable of discovery on inspection; and that the complaint was properly dismissed.

*Day* v. *Pool* (52 N. Y. 416); *Muller* v. *Eno* (14 id. 577) distinguished.

Reported below, 48 Hun, 577.

(Argued June 3, 1889; decided October 8, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order

made May 23, 1888, which affirmed a judgment in favor of defendants, entered upon the report of a referee.

The nature of the action and the facts are sufficiently set forth in the opinion.

*Austen G. Fox* and *Wallace Macfarlane* for appellant. Plaintiff is entitled to take advantage of the special findings as they are wholly irreconcilable with the general conclusion, if the latter is to be supported on the theory of actual performance. (*Redfield* v. *Redfield*, 110 N. Y. 671.) The plaintiff had a right to have the plates in his book printed on any paper he saw fit, and neither the referee nor Mr. McCuen nor the paper manufacturer had any right to decide that a different paper was better for the purposes of the contract than that therein described, or would be a compliance with the contract. (*Studer* v. *Bleistein*, 48 Hun, 577.) The provision of the contract that the plates shall be printed on " best eastern plate paper, equal to sample furnished by you," imports a warranty that the paper shall be of a particular description and equal to sample. (*Briggs* v. *Hilton*, 99 N. Y. 517; *Gurney* v. *A. & G. W. R. R. Co.*, 58 id. 358; *Kent* v. *Friedman*, 101 id. 616; *Wolcott* v. *Mount*, 36 N. J. 262, 267; *Bagley* v. *C. R. Mill*, 21 Fed. Rep. 159, 165; 2 Benjamin on Sales [Corbin's ed.] 856.) The obligation to use " best eastern plate paper equal to sample " would in an executory contract of sale be an express warranty that the paper should be of that kind and quality. (*Day* v. *Pool*, 52 N. Y. 416; *Brigg* v. *Hilton*, 99 id. 517; *Bagley* v. *C. R. Mill*, 21 Fed. Rep. 159; *Wolcott* v. *Mount*, 36 N. J. 262, 267; 2 Benjamin on Sales [Corbin's ed.] 857.) A warranty of quality covers all defects except, perhaps, those that at the time of acceptance are visible, open and notorious. (*Chatfield* v. *Frost*, 3 T. & C. 357, 359; Benjamin on Sales [4th Am. ed.] 610, §§ 6, 616, 618; *Bennett* v. *Buchan*, 76 N. Y. 386.) A finding on the existence of a warranty was not necessary. (Biddle on Warranties, § 83.) The plaintiff was entitled to have the tribunal trying the fact decide the controverted

questions of fact, such as acceptance on a correct apprehension of the legal significance of the material evidence. (*Myer* v. *Amidon*, 45 N. Y. 171; *Armstrong* v. *Dubois*, 90 id. 95.) The contract between defendants' testator and plaintiff was not a contract of sale but of bailment, *locatio operis faciendi*, and the referee and the Supreme Court erred in holding that an acceptance of the defective plates would preclude plaintiff from recovering damages for the defective workmanship and material in the plates or in any part of them. (*Clay* v. *Gates*, 1 H. & N. 73; Story on Bailments [9th ed.] §§ 429, 431; *Barrett* v. *Wharton*, 16 Week. Dig. 500; 101 N. Y. 631; *Norris* v. *La Farge*, 3 E. D. Smith, 375.)

*Ansley Wilcox* for respondents. The acceptance by the vendee of articles manufactured for him under an executory contract, after an opportunity to examine them, precludes him from raising any question as to defects or imperfections which were visible and capable of discovery or inspection, unless there is a warranty of their quality which was intended to survive their acceptance and give the vendee further time for trial and examination. (*Norton* v. *Dreyfuss*, 106 N. Y. 90, 94; *Coplay Iron Co.* v. *Pope*, 108 id. 232; *Brown* v. *Foster*, Id. 387, 392, 393; *Fairbank Canning Co.* v. *Metzger*, 43 Hun, 71; *Dutchess Co.* v. *Harding*, 49 N. Y. 321; *McCormick* v. *Sarson*, 45 id. 265; *Reed* v. *Randall*, 29 id. 358; *Dounce* v. *Dow*, 57 id. 16; 64 id. 411; *Bogue* v. *Newcomb*, 1 T. & C. 215; 58 N. Y. 674; *Neaffie* v. *Hart*, 4 Lans. 4; 1 Benj. on Sales, §§ 701, 703; *Gaylord Mfg. Co.* v. *Allen*, 53 N. Y. 515; *Gurney* v. *A. & G. W. R. Co.*, 58 id. 359.) It cannot be claimed that there was any warranty of the quality of the plates which was intended to survive their acceptance and to give the vendee further time for trial and examination. (*Coplay Iron Co.* v. *Pope*, 108 N. Y. 232, 236; 58 id. 359; 53 id. 515; 29 id. 358; 57 id. 16; 64 id. 411.) The appellant is estopped by his acts in dealing with the plates from claiming that they were in any respect defective. (Pomeroy Eq. Juris. § 804; *Blair* v. *Waite*, 69 N. Y. 113.) Where a

party engaged in any controversy or transaction has given one reason for his conduct, he cannot, after litigation has begun, change his ground and put his conduct upon another and different consideration. After an objection which he makes has been acted upon, and the opportunity has been lost to act upon any other objections to the course of the other party, it is too late to make such other objections, (*Railway Co.* v. *McCarthy*, 96 U. S. 258; *Goodwin* v. *Life Ins. Co.*, 73 N. Y. 480, 493; *Miesell* v. *Life Ins. Co.*, 76 id. 115; *Meincke* v. *Falk*, 61 Wis. 623, 625; *Hitchcock* v. *Covill*, 20 Wend. 167; 23 id. 611; *Gould* v. *Banks*, 8 id. 562; *Duffy* v. *O'Donovan*, 46 N. Y. 223; *Taylor* v. *Spader*, 48 id. 664; *Winter* v. *Coit*, 7 id. 288; *Carman* v. *Pultz*, 21 id. 547.)

RUGER, Ch. J. This action was brought to recover damages for an alleged breach of contract by the defendants' testator.

The plaintiff was the author and editor of a book called "Studer's Birds of North America," and the defendants' testator was engaged in the business of lithographic printing in colors and otherwise. The contract was in writing, and, so far as the questions in this case are concerned, was to the following effect: The defendants' testator proposed in writing to the plaintiff "to get out an edition of four thousand of each plate of your work, Birds of North America, best eastern plate paper, equal to sample furnished by you, * * * the stones with black drawings to be furnished by you. The color plates I agree to furnish correct in every detail, in the portraying of the birds, and in the general design and effect, as in the original colored copies furnished by you," for a price therein specified. The plaintiff accepted the offer in writing. There were to be one hundred and nineteen plates in each of the four thousand sets. When completed the plates were to be delivered to another company to print and bind, but no time for such delivery was stated in the contract.

It is now alleged by the plaintiff that some of the plates were defective in respect to the coloring of some of the birds, and that they were not printed on best eastern plate paper.

Immediately after the contract was executed, in April, 1881, the defendants' testator entered upon its performance. He procured the paper, upon which the work was to be lithographed, from the makers of the best eastern plate paper; but, upon an examination thereof by the plaintiff, he objected to its color, and thereupon the contractor procured other paper from the same manufacturers for the work. This paper the plaintiff frequently saw during the progress of the work and raised no objections to its quality or color, until long after the work was substantially completed.

In May, 1882, the first thousand sets of plates were finished, printed and bound, and the plaintiff was invited to inspect them with a view to their acceptance by him. He raised objections to the execution, in point of coloring, to some eight of the plates, and the defects being remediable, the defendants' testator agreed to perfect them by hand, to which the plaintiff assented. On July 1, 1882, the plaintiff was notified that the three thousand sets of plates necessary to complete the edition were finished and ready for inspection, and he was asked to examine the same with a view to their delivery to the parties who had contracted to do the press-work and binding, necessary to form complete books. On July 3, 1881, the plaintiff, after an unrestricted opportunity to inspect all of such plates, addressed and delivered the following letter to defendants' testator :

" The sample prints of the Birds of N. A. for the three thousand edition submitted to me and compared with the original sketches, are accepted.

" Yours, truly,

" J. H. STUDER."

This letter is slightly equivocal, but, in view of all the facts and circumstances, it cannot be construed as meaning anything but an intention to accept the entire edition referred to as open to inspection, and was correctly so considered by the referee. No question is raised but that the samples

examined were fair representations of the bulk of the edition of three thousand, and they were thereupon, with the knowledge and consent of the plaintiff, delivered to the printing and binding company to be finished under their contract. A few days thereafter plaintiff again examined the first thousand plates which had previously been rejected, and they having then been repaired and corrected by the printers, he, after a thorough inspection, accepted the same as a compliance with the contract. Although the evidence as to this acceptance was conflicting, that supporting the defendants' version largely preponderated, and the referee found that such plates were accepted.

This finding is, of course, conclusive as to the fact of acceptance, on this appeal. The whole edition of four thousand plates was printed upon the same quality of paper, by the same workmen, and from the same plates, and it can hardly be supposed that there was any material difference in the various sets. Subsequent to the acceptance, the printing and binding company, during the years 1882 and 1883, upon the plaintiff's orders, delivered to various purchasers from him in Canada and the several states of the Union, some six hundred volumes of the bound books containing the plates contracted to be furnished by the defendants' testator. The referee found that the paper used in printing the plates was equal in quality and color to the sample furnished by the plaintiff; that the defendants' testator fulfilled and performed his contract with the plaintiff, and that the plaintiff accepted such performance, and ordered judgment dismissing the complaint. The referee also found that there were no latent defects or imperfections in the prints of the three thousand edition, and that every difference between them and the original sketches and prints was discernible on inspection and comparison of the prints with said sketches. The only difficulty in the case arises over the additional findings of the referee made upon request of the plaintiff, which are now claimed by the appellant to be inconsistent, in some respects, with the original findings. Among other things, it is claimed that, inasmuch as the referee

has found that the best eastern plate paper was not used by the defendants' testator in making the plates, that there has been a breach of the contract in that respect. This contention proceeds, we think, upon a misconception of the meaning of the contract, which requires only "best eastern plate paper equal to sample furnished;" and it is expressly found that the paper used was equal to the sample. This finding is amply supported by the evidence. The apparent discrepancy is further explained by the referee's finding that the best plate paper is especially adapted to printing steel plate engravings and is not the best plate paper for printing colored lithographs, and that the paper used was the best plate paper used for the purpose contemplated by the contract.

We are of the opinion that the contract called for the best plate paper adapted to the purpose for which it was to be used, and that the paper furnished was a compliance with the meaning and intent of the contract as properly construed.

The referee, in addition to his finding that the contract was fulfilled and performed by the defendants' testator, also found " that said plates, as printed by said defendants under said contract, were not correct in every detail to portray the birds in general design and effect as provided in said contract, and that they were not such a reproduction of the original sketches furnished by Studer, under said contract, as were required thereunder, and were not fair or good reproductions." These findings are expressed in quite general terms, and do not assume to specify the defects alleged to exist. It does not appear from them but that they arose from imperfections in the plates which were furnished by the plaintiff, and for which the defendants' testator was not responsible; or from some other cause.

The findings are not inconsistent with the facts appearing in evidence that the imperfections complained of were confined to a few plates in the edition of the first thousand prints, and were quite slight and trivial in character; but, notwithstanding this fact, it would, we think, be improper for a court to ignore the apparent inconsistency existing between the

several findings of the referee in respect to this subject, were there not some controlling reason for doing so. The referee's decision evidently proceeded upon the theory that the acceptance of the prints by the plaintiff precluded him from raising any objection to the performance of the contract, in respect to such defects as were visible and capable of discovery upon inspection. The judgment of the referee was affirmed at General Term upon the same ground, and we are inclined to agree with both tribunals in the view they have taken of the case.

The general rule that acceptance of property manufactured under an executory contract by the vendee precludes him from subsequently claiming damages for defects in such property is elementary. It is also well settled that a warranty, even in an executed contract, does not extend to known defects. (*Schuyler* v. *Russ*, 2 Caine's Rep. 202; *Jennings* v. *Chenango Co. Mut. Ins. Co.*, 2 Denio, 75; *Bennett* v. *Buchan*, 76 N. Y. 386; *Day* v. *Pool*, 52 id. 416; *Parks* v. *Morris Ax and Tool Co.*, 54 id. 586; *Van Schoick* v. *Niagara Ins. Co.*, 68 id. 434.) And for obvious reasons fraud in respect to the quality and condition of property sold, cannot be predicated of defects which were visible and known to the party alleged to have been defrauded. The gravamen of fraud is deceit, and there cannot be fraud where a party is not deceived. (*Dambmann* v. *Schulting*, 75 N. Y. 55; Benjamin on Sales, § 555.) The claim here is, however, that there was an implied warranty of the quality of the material to be used and the character of the work to be done, which survived the acceptance of the property sold, and gave a right of action for defects subsequently discovered in such property.

We have before seen that this claim cannot be supported in respect to the quality of the paper used, as that fact has been found by the referee adversely to the claim of the appellant upon evidence which we regard as sufficient to support his finding.

The action must, therefore, be supported, if it can be held to lie at all, upon the claim of warranty to be implied from the description of the work contained in the contract. We

entertain no doubt but that this was an executory contract for the manufacture and sale of personal property; which, upon performance by the vendor, entitled the vendee to an opportunity of inspection and the right to accept or reject such property as he should determine after examination. The parties have obviously so treated the contract and should now be held to the interpretation which they have put upon it.

An acceptance by the vendee of personal property manufactured under an executory contract of sale, after a full and fair opportunity of inspection, in the absence of fraud, estops him from thereafter raising any objection as to visible defects and imperfections, whether discovered or not, unless such delivery and acceptance is accompanied by some warranty of quality manifestly intended to survive acceptance. (*Reed* v. *Randall,* 29 N. Y. 358; *Gaylord Mfg. Co.* v. *Allen,* 53 id. 515; *Gurney* v. *A. & G. W. R. Co.,* 58 id. 358; *Norton* v. *Dreyfuss,* 106 N. Y. 90; *Coplay Iron Co.* v. *Pope,* 108 id. 232; *Brown* v. *Foster,* Id. 387.)

It was said in *Gurney's Case* that "the general rule is when articles are sold upon an executory contract    *    *    *    that a delivery and acceptance of articles after examination, or an opportunity to examine them, is a consent and agreement that the articles compared with the contract and precludes a recovery for any defects which may exist." The rule stated in *Norton* v. *Dreyfuss,* assuming that there was no fraud inducing the acceptance, was "that the acceptance by the vendee of articles manufactured for him under an executory contract, after an opportunity to examine them, precludes him from raising any question as to defects or imperfections which were visible and capable of discovery on inspection, unless there is a warranty of their quality which was intended to survive their acceptance and give the vendee further time for trial and examination. In *Coplay Iron Co.* v. *Pope* it is said : "The representation as to kind and quality of iron was part of the contract of sale itself, descriptive simply of the article to be delivered in the future, and clearly within the cases cited, an acceptance of the property    *    *    *    without any offer

to return the same at any time, deprives the person so accept-
ing of any right to make complaint of its inferior quality."

The opinion of Chief Judge CHURCH in *Dutchess County* v.
*Harding* (49 N. Y. 321), is peculiarly applicable to this case.
He says : " The learned judge who tried this case at the circuit
ruled that the contract for the sale and purchase of the sumac
was executory ; that there was no warranty, express or implied,
and that the acceptance of the delivery of the merchandise, after
an examination, was conclusive upon the plaintiffs of an assent
on their part that the property was of the quality contracted for,
and in the absence of fraud prevented any claim by them on
account of its inferior quality.   *   *   *   There was no error
of law in this ruling.   The acceptance of the property under
such a contract implies a consent or agreement on the part of the
vendee that the quality is satisfactory, and is conclusive upon
him.   He is not bound to accept a different article from that
contracted for, and he is entitled to an opportunity for exam-
ination.   The agreed quality is regarded as a part of the con-
tract of sale itself, and not as a warranty or agreement
collateral to it."   The case, however, was determined upon
the ground that the acceptance of the sumac was induced by
fraudulent practices on the part of the vendor.   The case of
*Day* v. *Pool* (52 N. Y. 416) is not in favor of the appellant.
In that case the defects of the article sold were not discern-
ible upon inspection, and there was a warranty of the quality
of the syrup sold, which was obviously intended to survive
the receipt and use of the property.   It was, however, held
in that case, that the vendee in an executory contract cannot
rely upon a warranty as to defects open and visible.   *Muller*
v. *Eno* (14 N. Y. 597) was a case upon an executed contract
of sale accompanied by an express warranty.   In *Brigg* v.
*Hilton* (99 N. Y. 529), although the contract of sale was
executory, it was held that an independent warranty as to the
quality of the goods sold accompanied the delivery and
induced their acceptance without inspection.

We think the authorities are uniform to the effect that a
deliberate, intelligent and intentional acceptance of property

manufactured under an executory contract of sale after inspection precludes the vendee from claiming damages for any visible or discoverable defect in the property sold.

The acceptance disclosed by this case is not one to be inferred from the receipt of the property without objection, but is founded upon an actual inspection made with the view of determining the question whether the property should be received as a performance of the contract or not. We think the acceptance was unequivocal, with a full understanding on the part of the plaintiff of its design and effect. The inspection of the goods was invited for the purpose of obtaining authority to deliver the goods on behalf of the plaintiff to the parties who had contracted to print, and bind the plates into books for him. The goods were clearly accepted for this purpose, and they were immediately handed over to those parties for the performance of the work they had contracted to do upon them. The plaintiff well understood this purpose and treated the contract of the defendants' testator as having been performed, by assuming the ownership and control of the property thereafter, directing the style and mode of binding, and making sales of the books thus bound, and requiring their delivery to his vendees during a period of nearly a year after such acceptance. Under such circumstances he is not at liberty to claim that there was no acceptance of the property sold, or claim damages for defects in the articles so accepted. (*Brown* v. *Foster*, *supra* ; *Lillywhite* v. *Devereux*, 15 M. & W. 285.)

The facts of this case bring it clearly within the authorities cited. The ground upon which any claim of warranty can be founded relates solely to the description of property contained in the contract of sale. It refers only to those qualities which were readily discernible upon inspection, and was not collateral to, but a necessary part, of the contract of sale, and affords no ground for the inference that any warranty was intended which should survive the acceptance of the property.

The judgment should, therefore, be affirmed.

All concur.

Judgment affirmed.