OSGOOD CARLETON and GEORGE B. MOFFATT, Respondents, v. LOMBARD, AYRES & CO., Appellant.

*Implied warranty — contract made subject to the rules of a produce exchange — when a right of action for defects in goods exists after acceptance thereof — evidence.*

Where an article is sold under a contract which specifies the qualities which it shall possess, the law will not, except in special cases, imply a warranty that the article has other qualities.

Where a contract was made "subject to the rules of the New York Produce Exchange," of which association the contracting parties were members, such rules must be taken as a part of the contract and be given the same effect as though incorporated therein.

When a manufacturer enters into a contract to make and deliver a specified article which is to be identified and inspected by the vendee, with the right of rejection in case it does not conform to the contract, a right of action for defects in the article does not arise unless the defects could not have been discovered by the ordinary tests known to the trade, or unless there was a warranty or stipulation in regard to the quality of the article which it was manifestly intended by the parties should survive their acceptance.

In an action brought for the recovery of damages for an alleged breach of contract to deliver a certain article of a specified standard of excellence, it was claimed, on the part of the plaintiffs, that there were latent defects in the article delivered, causing its damage, and evidence was given by them tending to show that the defects complained of could not be easily ascertained at the time when, and the place where, the article was delivered to them. The defendant offered to show that such defects could have been ascertained at the time and place of delivery by well-known tests.

The offer was excluded and an exception was taken.

*Held*, that such exclusion was improper; that neither express nor implied warranties cover known defects.

On the trial of the action the judgment roll in another action, brought against the plaintiffs in the present action by parties who had purchased the article from them, to recover damages for a breach of warranty thereof, in which the court ruled that the only question for determination was whether the article

was, at a certain time, merchantable, of good quality and in g ʒod ᴄondition, was received in evidence.

*Held,* that such admission was improper ; that the judgment roll was not competent evidence in this action, in which the same issues were not involved as in the former suit.

APPEAL by the defendant, Lombard, Ayres & Co., from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 13th day of January, 1893, upon a verdict for the plaintiffs directed by the court after a trial at the New York Circuit.

This action was brought for the recovery of damages for an alleged breach of a contract to deliver 55,000 cases of refined petroleum of a specified standard of excellence.

The plaintiffs are partners under the firm name of Carleton & Moffatt, and the defendant is a domestic corporation engaged in refining petroleum for export, having its refinery at Bayonne in the State of New Jersey.   On the 10th day of January, 1887, the parties entered into a contract, of which the following is a copy :

" CASE OIL CONTRACT.

" NEW YORK, *January 10th,* 1887.
" Sold for account of Mess. Lombard, Ayres & Co.
         " To Mess. Carleton & Moffatt.

" Fifty-five thousand (55,000) cases ten (10) per cent more or less, each case packed with two of their patent cans with low screw tops or nozzles and brass labels containing five (5) gallons each of refined petroleum of their ' Stella ' brand, color standard white or better, fire test 76 degrees Abel or upward, at eight and one-half (8½) cents per gallon, cash on delivery.   To be delivered in yard free of expense to vessel to be ready not earlier than the twenty-fifth (25th) of January, 1887, nor later than the tenth (10th) of February, 1887, with twenty-five (25) days to load. "

[MARGINAL NOTE.—" No responsibility taken unless by special agreement."

" Brass labels one-half (½) of one (1) cent each.

" All drawbacks to accrue to sellers.

" Buyers to complete bond and furnish landing certificates.   In case of damage by fire or other accident, by reason of which sellers

are unable to deliver the goods in the time specified in this contract, a notice from sellers that they intend to repair their works shall make it the duty of the buyers to elect within 96 hours whether they will allow an extension of time, sellers paying any demurrage that may accrue, or accept other brands.

"Subject to the rules of the New York Produce Exchange.

"BABCOCK & COX,

"*Brokers.*

"Brokerage ½ of one per cent by seller."

Indorsed :

"Accepted, LOMBARD, AYRES & CO."

The marginal note, "No responsibility taken unless by special agreement," refers to the brokers' liability.

The plaintiffs and the president and the vice-president of the defendant are members of the New York Produce Exchange. Both parties to the contract understood that the oil was to be shipped to Calcutta by a sailing vessel.

The following are the rules of the New York Produce Exchange :

"Rule 3. It shall be the duty of the committee on petroleum to approve and license, as inspectors for the various branches of the petroleum business, such persons, members of the New York Produce Exchange, as upon examination are found duly qualified. The committee shall also have power to revoke such license for cause."

"Rule 10. Refined petroleum shall be standard white or better, with a burning test of 110 degrees Fahrenheit or upward, and of a specific gravity not below 44 degrees Beaumé United States dispensatory standard."

"Rule 46. When goods are delivered to vessel by buyer's orders the acceptance of them by buyer's inspector shall be an acknowledgment that the goods are in accordance with the contract."

"Rule 59. Buyers shall have the right of naming their inspector, but shall do so at least five days before the maturity of the contract ; failing in which the sellers may employ, at buyer's expense, any regular petroleum inspector approved by the committee on petroleum, and his certificate that the oil is in conformity with the contract shall be accepted. On a contract for prompt delivery, or where

no notice is required, buyers shall name their inspector when contract is executed; otherwise sellers may appoint the inspector at buyer's expense."

"Rule 66. All transactions in petroleum and its products among members of the New York Produce Exchange shall be governed by the above rules, but nothing therein contained shall be construed as interfering in any way with the rights of members to make such special contracts or conditions as they may desire."

"I. H. Archer & Co., appointed by the petroleum committee of the N. Y. Produce Exchange, inspectors of the quality, cooperage and weights of petroleum and its products."

On the 10th of January, 1887, Carleton & Moffatt contracted to sell the cargo of oil to Graham & Co., a firm engaged in business at Calcutta, India.

I. H. Archer & Co. were inspectors of petroleum, appointed by the New York Produce Exchange, whom the plaintiffs selected to inspect the oil to be delivered. Before March 1, 1887, the oil was delivered at the Seaboard yard, at which the *Corby* was loaded, and inspected by I. H. Archer & Co., who gave the following certificate:

"NEW YORK, *March* 1st, 1887.

"We hereby certify that we have inspected the contents, fifty-three thousand two hundred and ninety-five (53,295) cases Refined Penna. Petroleum, shipped by Messrs. Carleton & Moffatt, on board the Br. Ship *Corby*, and report the same as follows:

"Brand: Stella.                                    Mark (G)
                    "Nos. 86 c 133.
                    "in lots of 1000.
"Color: Standard White or better.
"Abel test: Seventy-six (76) degrees Fahr. & upwards.
"Gravity: Forty-four and a quarter to forty-six ($44\frac{1}{4}$–46) degrees B.
                        "I. H. ARCHER & CO.,
                                    "*Inspectors.*"

The *Corby*, on which the oil was shipped, sailed from the port of New York early in March, 1887, and arrived at Calcutta June eighth of the same year. Upon the arrival of the vessel in Calcutta, many

of the tin cans which held the oil were found so corroded that their contents had leaked into the hold of the vessel, greatly damaging the entire shipment.

In July, 1888, Graham & Co. brought an action in the Supreme Court of this State against Carleton & Moffatt, for the recovery of the damages, alleging that at the time of the sale the vendors "represented and warranted to the plaintiffs (Graham & Co.) that the said cans contained refined petroleum of the Stella brand, of good and merchantable quality; that the same had been properly refined and was free from any water, acid or other vicious substance which could injure the same or render the same unmerchantable; that the same was contained in good and strong tin cans of suitable material, properly inclosed in cases also of suitable material, and that the said cases, cans and contents were in a condition to be properly transported to Calcutta by the said sailing vessel, and to be there delivered in good order and condition."

This allegation was denied by Carleton & Moffatt. Upon the trial of this issue a verdict was rendered against Carleton & Moffatt for $44,612.48, upon which a judgment was entered for $48,098.75, damages and cost.

In March, 1891, this action was begun to recover the amount which the plaintiffs in this action, the defendants in the former one, had been compelled to pay, including the costs and expenses incurred in the defense. Lombard, Ayres & Co. received notice of the action against Carleton & Moffatt and assisted in the defense thereof.

*Benjamin F. Tracy*, for the appellant.

*Esek Cowen*, for the respondents.

FOLLETT, J.:

The plaintiffs concede that the oil delivered by the defendants was of the kind and quality called for by the written contract, and possessed the qualities and sustained the tests required thereby, but they insist that there were latent defects in the article, causing the damages recovered by Graham & Co. They assert that the law implies a warranty by manufacturers that their products are free from latent defects caused by imperfect or unskillful workmanship, which is collateral to the contract of sale. Originally the word

" warranty," as used in connection with sales, was applied solely to contracts for the sale of existing articles, identified at the time of sale, the title to which passes under the contract, and the obligation arising from a warranty was held to be a purely collateral undertaking which survived the delivery of and the payment for the article sold.

The nature of a warranty is clearly stated in 2 Smith's Leading Cases (6th ed.), 27 : " A warranty, properly so called, can only exist where the subject-matter of the sale is ascertained and existing, so as to be capable of being inspected at the time of the contract, and is collateral engagement that the specific thing so sold possesses certain qualities, but the property passing by the contract of sale, a breach of the warranty cannot entitle the vendee to rescind the contract and revest the property in the vendor without his consent. * * * But where the subject-matter of the sale is not in existence, or not ascertained at the time of the contract, an engagement that it shall, when existing or ascertained, possess certain qualities, is not a mere warranty, but a condition, the performance of which is precedent to any obligation upon the vendee under the contract, because the existence of those qualities, being part of the description of the thing sold, becomes essential to its identity, and the vendee cannot be obliged to receive and pay for a thing different from that for which he contracted."

But in the modern cases the word has been used as synonymous with stipulations in executory contracts prescribing the qualities of the goods to be sold, the title to which is to be vested in the vendee at a future day. In the case of executed sales the warranty is a collateral undertaking, but in the case of executory sales the agreement to deliver articles of a specified standard of excellence is not a collateral undertaking, but is part of the contract to sell and deliver. Warranties are express or implied. An express warranty arises when the vendor makes an affirmation in respect to the quality of the goods sold. An implied warranty arises : (1) When an examination of the goods is impracticable a warranty will be implied that they are merchantable ; (2) on an executory contract for the sale of goods to be manufactured or procured for a particular purpose or use a warranty will be implied that they are fitted for such purpose or use ; (3) a warranty is implied that there are no latent defects in

case the seller, being a manufacturer or producer, might have provided against the existence of the defects.   There are other cases in which warranties are implied, but they are not germane to the case at bar.

The contract is full and explicit.   By it the vendors were bound to deliver a specified quantity and kind of oil having prescribed qualities, and it makes no difference in this case whether the stipulations relating to quality be called warranties or conditions for they have all been performed by the defendant.   This is conceded.   The plaintiffs seek to recover, not for a breach of any of the stipulations in the written contract, but for a breach of a condition or warranty that the oil was properly manufactured, merchantable, free from defects and in condition to be transported to Calcutta by a sailing vessel and there delivered in good order and condition, which the plaintiffs assert by implication of law is a part of the contract.   It is well settled that when an article is sold under a contract which specifies the qualities which it shall possess — no matter whether the language be a condition or a warranty — that the law will not, except in special cases, imply a warranty or condition that the article has other qualities.   A warranty or condition in a contract of sale that the article sold has certain qualities excludes the implication of a warranty or condition that it possesses other qualities. (*Baldwin* v. *Van Deusen*, 37 N. Y. 487 ; *Parkinson* v. *Lee*, 2 East, 312 ; *Budd* v. *Fairmaner*, 8 Bing. 48–52 ; *Dickson* v. *Zizinia*, 10 C. B. 602 ; *Deming* v. *Foster*, 42 N. H. 165 ; *Whitmore* v. *South Boston Iron Co.*, 84 Mass. [2 Allen] 52.)   The reasons for the rule are so well stated in the cases cited and are so obvious that a re-statement of them is not required.

A warranty of soundness does not exclude an implication that the vendor warranted his title, nor is the rule applicable to cases of fraud.   The discussion of this case might well be ended at this point, but there are rulings excepted to which are fatal to the judgment.   This contract was by its terms "subject to the rules of the New York Produce Exchange," of which association the contracting parties are members.   These rules must be taken as part of the contract and given the same effect as though incorporated therein.

Rule 46 provides : " When goods are delivered to vessel by buyer's orders the acceptance of them by buyer's inspector shall

be an acknowledgment that the goods are in accordance with the contract."

Rule 59, quoted in the statement of facts, provides that the certificate of the inspector " that the oil is in conformity with the contract shall be accepted."   In this case the goods were delivered to the *Corby* by the buyer's orders and they were accepted by the buyer's inspector, which is an acknowledgment that the goods were in accordance with the contract.   The inspection and acceptance must be deemed to be an assent that the goods comply with all of the conditions of the contract, whether those conditions are expressed or implied.   When a manufacturer enters into a contract to make and deliver specified articles, which are to be identified and inspected by the vendee, with the right of rejection in case they do not conform to the contract, a right of action for defects in the article does not arise unless the defects could not have been discovered by the ordinary tests known to the trade, or unless there is a warranty or stipulation in regard to the quality which is manifestly intended by the parties should survive acceptance.   (*Studer* v. *Bleistein*, 115 N. Y. 316.)

And so, if it be assumed that the law will imply a condition or warranty that the oil was merchantable, free from defects and in a condition to bear transportation to Calcutta without injury, the right of action for such defects would not survive inspection and acceptance in case the defects were discoverable by ordinary tests known to and used by those dealing in such commodities, for there is no evidence in the case which would justify the inference that the warranty or condition which we are asked to imply was intended to survive acceptance after inspection.

The evidence given by the plaintiff tended to show that the defects complained of could not have been easily ascertained at the time when, and at the place where, the oil was delivered to them.   The defendant offered to show that these defects could have been ascertained at the time and place of delivery by well-known tests.   This offer was excluded and an exception taken.   Neither express nor implied warranties cover known defects.   When a manufactured article is tendered in performance of a contract of sale under which it is the duty of the vendee to inspect and accept or reject, the vendor does not remain liable for patent defects or defects discover-

able by the application of known tests, unless he so agrees. (*Monitor Milk Pan Co.* v. *Remington*, 41 Hun, 218 ; *Studer* v. *Bleistein*, 48 id. 577 ; affd., 115 N. Y. 316.)

The dissenting opinion in the *Monitor Milk Pan* case was placed on the ground that it was conceded that when the pans were inspected and delivered, the parties to the contract knew of no test by which the defect subsequently developed by actual use could have been discovered. In that case the defendant's expert testified that he did not know of any test which would have determined whether the enamelling was well done or not. In that case the referee found that the test by lactic acid was unknown to both parties at the time of inspection, was not then in practical use, and that there was no evidence that it was then known except to scientists.

The judgment roll in the action brought by Graham & Co. was neither proof nor evidence on this question because no such issue was involved in that action. The oil was not sold to Graham & Co. subject to the right and duty on their part to inspect or reject, nor did they purchase it subject to the rules of the New York Produce Exchange. The plaintiffs in this action allege in their complaint that it was ruled on the trial between Graham & Co. and Carleton & Moffatt " that the only question for determination in said case was whether or not said oil, at the time of its shipment on board the *Corby* at Bayonne, was merchantable oil, of good quality and in good condition." In the face of this allegation it cannot be successfully contended that the former judgment was evidence bearing upon the question whether the defects in the oil could have been discovered by inspection.

The view we have taken of this case renders it unnecessary for us to determine whether rule 46 which was made a part of the contract is an arbitration clause.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and BARRETT, J., concurred.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event.