J. I. Case Plow Works, Respondent, vs. Niles & Scott
Company, Appellant.

J. I. Case Plow Works, Appellant, vs. Niles & Scott Company, Respondent.

*May 17 — September 26, 1895.*

*Sale of chattels: Goods made to order: Written contract: Implied warranty: Fitness for particular purpose: Prior oral warranty: Defective material: Breach of warranty: Measure of damages: Evidence.*

1. Wheels sold under a written contract were made specially for the purchaser, who had specified sizes, dimensions, and materials. Before the written contract was made, wheels of that kind manu-

J. I. Case Plow Works vs. Niles & Scott Co.

factured by the vendor had been examined by the purchaser and tested in his presence as to quality and strength. The contract contained no express warranty except one against defects in material and workmanship. *Held,* that there was no implied warranty of the suitableness of the wheels for the purpose for which, to the knowledge of the vendor, they were intended. *Merriam v. Field,* 24 Wis. 640, and *Boothby v. Scales,* 27 id. 626, distinguished.

2. No express oral warranty, made prior to the written contract, could be shown.

3. A defect in the plan of the wheels was not a defect in workmanship, that having to do only with the execution of the plan.

4. For a breach of the warranty by furnishing defective wheels the proper measure of damages is the difference between the actual value of such wheels and their value had they been in accordance with the warranty, to which may be added compensation for the trouble and expense and other special damages incurred in consequence of the wheels not being in conformity with the contract.

5. The price paid or agreed to be paid for the wheels is competent evidence of their value had they been as warranted.

6. The fact that the purchaser sold the wheels, or a part of them, to third parties cannot be shown to modify the rule of damages, even though the amount received for them was equal to the original purchase price.

7. Under the warranty against defects in material, the vendor was bound to use material of suitable grade and quality, and could not comply with the contract by using a cheap and inferior grade, unfit to be used in the manufacture of such wheels.

8. In order to recover for breach of the warranty, the purchaser must show by competent evidence how many wheels were defective because not as warranted; and it cannot be inferred that all were defective because a large number of them were.

APPEALS from a judgment of the circuit court for Racine county: FRANK M. FISH, Circuit Judge. *Reversed on each appeal.*

The plaintiff brought action against the defendant company, engaged in the manufacture of wheels for agricultural implements, to recover damages sustained by reason of the breach of warranty of 11,000 such wheels, ordered and purchased of the defendant under a written contract dated

August 16, 1888, which, it appears, was a written order given by the plaintiff to the defendant, and accepted by the latter in writing, as follows:

"You may enter our order for our season's wants on the following styles of wheels, and at the prices and terms named:

| | |
|---|---|
| 32-in. walking cultivator wheel, 1¼ rim, half oval, 8 steel spokes or 10 iron spokes, ⅝ ........................ | $ 60 each |
| 31-in. walking cultivator wheel, 1¼ rim, half oval, 8 steel or 10 iron spokes, ⅝ ......................... | 59 each |
| 32-in. sulky wheel, 2¼ rim, half oval, 14 steel spokes, ⅝ ...... | 1 00 each |
| 24-in. wheel, 2 in. double channel rim, 8 steel spokes, ⅝ ...... | 70 each |

.  .  .  .  .  .  .  .  .  .  .  .  .  .

"You to guaranty the wheels against breakage in shipping, and against defects in material and workmanship. . . ."

It was alleged in the plaintiff's complaint that the defendant, at the time of entering into the contract, well understood and knew that the plaintiff desired said wheels to attach to the farm machinery manufactured by it, such as cultivators, etc., and that the defendant guarantied the wheels as above stated, and that said wheels should be proper and suitable for the purposes for which the plaintiff desired them; that the plaintiff ordered and received of the defendant, under the contract, wheels to the number of 11,000, and paid it therefor $7,331.12; that at the time of the sale such wheels were defective in material, construction, and workmanship, and were totally unfit for the uses and purposes for which the plaintiff purchased them, to its damage of $7,331.12; that the plaintiff, at great expense and relying on said guaranty, placed large numbers of such wheels upon plows, cultivators, etc., and placed the same on the market, and, when tested, said wheels were found worthless, and a large number of such plows, cultivators, etc., were returned by the various purchasers of the same, and the plaintiff was put to $5,000 expenses in the premises, and by reason of such

J. I. Case Plow Works vs. Niles & Scott Co.

defective wheels it lost the sale of a large number of its machines and implements, and suffered injury to its business and reputation.

The defendant denied that it made any other or further warranties than those expressed in the contract, and it alleged that, prior to making the contract, samples of wheels were carefully examined and tested by the plaintiff, and that it had full knowledge of the principle of construction of said wheels, and of the material, workmanship, and quality thereof, and of all weakness, if any, and liability to breakage, except from defective material or workmanship, and made selection of the kind of wheels it desired, and of the materials thereof, and assumed the risk of failure or breakage, except from shipment, defective materials or workmanship. It set up counterclaims — first, for a balance due on the wheels of $1,793.07; second, for wheels, etc., sold under another contract, upon which there was due a balance of $914.28,— and demanded judgment for said sums, with interest.

The plaintiff, in reply, insisted, as to the first counterclaim, that upon the grounds set out in the complaint it was not liable for the balance claimed, and admitted the balance claimed under the second counterclaim. It also asserted, by way of defense to the first counterclaim, that the defendant, at and prior to the making of the contract for said wheels and the sale of the same, stated to the plaintiff that the wheels covered by said contract were good, merchantable wheels, suitable for agricultural implements, and were of good material, workmanship, and principle of construction, and had been thoroughly tested and in use a number of years, and that no complaints had been made of them; that defendant well knew the purposes for which the plaintiff desired the wheels. And the plaintiff alleged a breach of these express oral and implied warranties, to the plaintiff's great damage, etc.

At the trial before the court without a jury, evidence was given by selling agents of the plaintiff and others to the effect that the wheels did not give satisfaction to farmers, for the reason that the ends of the spokes would break at the flanged end, thereby letting the spokes out of the hub, and letting the wheel fall down and rendering it useless; that all the spokes of the wheels proved to be weak at the flanged end. And evidence was given, against the defendant's objection, tending to show that the principle or plan of construction of the wheels was wrong; that there could be no wheel manufactured upon the principle or plan of the wheel in question that would give satisfaction, for the reason that the spokes had no actual bearing in the hub, they being loose in the hub, and if the nut was tightened so as to afford the spoke any support the pressure would be so great that it would break the nut off the spoke; that the plaintiff had to take back many of the wheels, and furnish others in their places; that the defect in the wheels was in the plan of construction; and that they would not stand. Other of the plaintiff's agents and witnesses testified that, in addition to the defects named, the material used in the spokes was defective; that the ends of the spokes used to break off where they went into the hubs, and the hubs sometimes came loose; and the spokes seemed to be of poor material, breaking off square with little strain; that the wheels were defective in some respects in workmanship and in material and construction, and tending to show that they would not stand the work for which they were intended. The evidence as to construction, plan, and suitableness for the purposes for which they were intended, was objected to by the defendant.

It appeared that the spokes of the wheels were of common iron, and considerable evidence was given to show that common iron was not a suitable or sufficient material for the purpose, and that refined iron should have been used, being more uniform in strength, and that common iron varies and

is not of uniform strength. The total number of iron wheels shipped out by plaintiff to agents, as sold and to be sold, was 13,894, of which 3,556 were returned to it, and 400 remained in the hands of agents as defective, and 2,089 had not been shipped out at all. These wheels were made specially for the plaintiff, and it specified the sizes and dimensions and material, and, before the contract was signed, defendant sent to the plaintiff wheels of the kind in question to be examined, and the plaintiff's agents talked over the matter of the wheels with defendant's agent very fully, and looked them over as closely as they could, and in their presence the wheels were subjected to certain tests as to their quality and strength. The defendant's agent Scott represented that it had sold a large number of the wheels for two or three years, and they had had no complaints of them, and that the method of construction, in respect to which some doubt was expressed, was no experiment, and that he knew, from actual, practical field work, that the wheels were all right in that respect, and thereupon the plaintiff concluded the contract with the defendant. The wheels having proved defective as stated, in March, 1890, the plaintiff sent out a circular to have all wheels made by the defendant company that were defective, whether sold or unsold, returned by the 1st of July, and the number returned was 3,556. All the wheels that the defendant company had put out for any pur-pose had steel spokes, excepting the wheels furnished the plaintiff. Refined iron, suitable for such use, would cost double what common iron would cost, and double-refined iron would be better than steel. The most prominent objection to the wheels appeared to be the plan of construction, and the use of common iron for spokes, instead of steel or refined iron.

On behalf of the defendant, evidence was produced, in substance, that the only iron wheels that had been made for the trade were those in question for the plaintiff, and that

sample wheels sent by the defendant were tested in the presence of the plaintiff's agents the day before the contract was made, and when other manufacturers were making propositions to supply the plaintiff with wheels of their make; that the defendant made all its propositions on the basis of steel spokes, and, when the contract came to be written out, Mr. Wallis, the plaintiff's secretary and treasurer, "wanted to insert iron spokes,— ten iron spokes in lieu of eight steel spokes in the walking cultivator wheels;" that Scott said they had never made any wheels of iron spokes, and that he did not approve of it at all; that steel spokes were stronger and reliable, and could be depended upon; that Wallis said that their experience was that iron was better for spokes than steel; that Scott insisted strongly upon furnishing steel spokes, and finally Wallis said, "You would just as soon furnish ten iron spokes, wouldn't you, as eight steel?" that from the data Scott had he made a computation and found that the cost of ten iron spokes and eight open-hearth steel spokes was substantially the same, and so he consented that the contract might be for eight steel or ten iron spokes; that the defendant paid for its iron that year $1.60 per hundred, and refined iron would have cost $2.90, at least; that the first 1,000 wheels were made with steel spokes. The witness described very fully and elaborately the plan and method of making the wheels, and said that none but good iron was used in making them.

Considerable correspondence took place between the parties in relation to the transactions in question and the material for manufacturing the wheels, and a good deal of expert testimony was adduced in respect to their plan and method of manufacture. October 6, 1888, defendant company wrote the plaintiff: "We wish you would consent to use steel spokes, at least in the 1,000 cultivator wheels. Steel is stiffer and stronger, and is better, and we don't crystallize it by heating or pressure at the hub. We can get the iron

rods from the mill at $1.90, and the steel at $2.40; so we should make a saving, in a money way, to use iron instead of steel," — in reply to which the plaintiff company wrote: "We prefer the ten-spoke iron wheel, for, although it may not be any stronger than the eight-spoke steel wheel, it looks more substantial, and, we think, would be a better wheel for our purpose." October 12, 1888, the plaintiff company wrote the defendant: "We note that in the first 1,000 wheels you send us you will use ten steel spokes. This will be all right. We are not particularly afraid of the steel, in your construction of the wheel, but suppose, if you furnished them regularly, you would want more money for the ten steel spokes than for the eight, and we like the appearance of the ten-spoke wheel better than the eight-spoke, and therefore order them in ten iron spokes." The plaintiff insisted on having iron spokes in the wheels, and June 1, 1889, wrote defendant: "Note that you think that the trouble with the breakage in the spokes is due to their being iron. We do not agree with you in this, as open-hearth steel is certainly weaker than iron. . . . What wheels we have this year must be with iron spokes."

The court found, among other things, that "at the time the defendant entered into the contract it was fully aware of the uses and purposes for which said wheels were purchased by the plaintiff;" that under the contract the defendant sold and delivered to the plaintiff wheels and other merchandise to the contract value of $9,718.87, and that the plaintiff had paid thereon $7,925.80, and that there was due the defendant on that account $1,793.07, with interest from August 22, 1889; that the balance due the defendant on its second counterclaim was $914.28; that in the construction of wheels with iron spokes, shipped by the defendant to the plaintiff in pursuance of the terms of the contract, the defendant used common iron in the manufacture of such spokes; that wheels so constructed were defective in mate-

rial, and not fit and proper for the uses and purposes for which they were purchased; that, of such defective wheels, the plaintiff had sold and disposed of a portion of the same to third parties, and had received an amount therefor equal to the purchase price of the same, and was not entitled to recover damages on such wheels so sold and disposed of; that by reason of said defective wheels so shipped the plaintiff had suffered damages in the sum of $4,655.54. And judgment was given in favor of the plaintiff for the difference between this sum and the amount found due on the defendant's counterclaims, with costs, from which both parties, having filed exceptions to the findings, separately appealed.

For the plaintiff there was a brief by *Percival S. Fuller* and *Colin C. H. Fyffe,* attorneys, and a supplemental brief signed also by *T. W. Spence,* of counsel, and the cause was argued orally by *Mr. Fuller* and *Mr. Spence.* They contended, *inter alia,* that where the manufacturer sells an article for a fair price the law implies a warranty that it is reasonably fit for the use for which it was manufactured or purchased; and when a manufacturer sells an article for a particular purpose of which he is notified at the time of the purchase he warrants it free from latent defects rendering it unfit for that purpose. *Getty v. Rountree,* 2 Pin. 379, 390; *Walton v. Cody,* 1 Wis. 430; *Williams v. Slaughter,* 3 id. 360; *Bird v. Mayer,* 8 id. 362; *Fisk v. Tank,* 12 id. 306, 336; *Woodle v. Whitney,* 23 id. 55; *Leopold v. Van Kirk,* 27 id. 152; *Boothby v. Scales,* id. 626; *Bonnell v. Jacobs,* 36 id. 60; *Merrill v. Nightingale,* 39 id. 247; *Morehouse v. Comstock,* 42 id. 626, 630; *Buffalo B. W. Co. v. Phillips,* 67 id. 134. A similar rule obtains on goods manufactured to order. 2 Suth. Dam. 425, 429; *Brown v. Sayles,* 27 Vt. 227; *Merrill v. Nightingale,* 39 Wis. 247; *Fisk v. Tank,* 12 id. 306. The foregoing warranty implied by law covers defects in principle of construction, if such defects unfit the goods for their intended use. *Getty v. Rountree,* 2 Pin. 379; *Merrill v.*

*Nightingale,* 39 Wis. 247; *Buffalo B. W. Co. v. Phillips,* 67 id. 134. And the written warranty of certain points does not exclude a warranty which the law implies and which is not embraced therein. *Boothby v. Scales,* 27 Wis. 626; *Merriam v. Field,* 24 id. 640, 644; *Leopold v. Van Kirk,* 27 id. 152; *Collette v. Weed,* 68 id. 428, 434. The proper measure of *general* damages is the difference between the actual value of the wheels delivered and their value had they been as warranted; and the price paid or contracted to be paid is evidence of the latter value. *Aultman & T. Co. v. Hetherington,* 42 Wis. 622; *Giffert v. West,* 33 id. 617; *Merrill v. Nightingale,* 39 id. 247; *Bonnell v. Jacobs,* 36 id. 59; *Chaplin v. Warner,* 23 id. 448. The disposition which the purchaser makes of the goods is immaterial, and the price for which he sells them can never be introduced to work a modification of the rule that the measure of damages is the difference between the goods as contracted for and the goods as actually delivered. 2 Sedg. Dam. (8th ed.), § 762; 2 Suth. Dam. 422; *Muller v. Eno,* 14 N. Y. 597; *Medbury v. Watson,* 6 Met. 246; *Brown v. Bigelow,* 10 Allen, 242; *Atkins & Co. v. Cobb,* 56 Ga. 86; *Wheelock v. Berkeley,* 138 Ill. 153; *Hogan v. Shuart,* 11 Mont. 498; *Brock v. Clark,* 60 Vt. 551; *Texada v. Camp,* Walker (Miss.), 150; *Jones v. Just,* L. R. 3 Q. B. 197; *Hunt v. Van Deusen,* 42 Hun, 392. Special damages, consisting of actual losses directly consequent on the failure of the wheels to fulfil the use contracted for, are recoverable in this action. 2 Suth. Dam. (2d ed.), § 671; *Fisk v. Tank,* 12 Wis. 306; *Bagley v. Cleveland R. M. Co.* 21 Fed. Rep. 159; *Dushane v. Benedict,* 120 U. S. 630; *Harrow Spring Co. v. Whipple H. Co.* 90 Mich. 147; *Wintz v. Morrison,* 17 Tex. 372; *Ferris v. Comstock,* 33 Conn. 513; *Fox v. Everson,* 27 Hun, 355; *Philadelphia W. Co. v. Detroit W. L. Works,* 58 Mich. 29; *Whitehead & A. M. Co. v. Ryder,* 139 Mass. 366.

For the defendant there was a brief by *Cooper & Nelson,*

attorneys, and *John B. Simmons,* of counsel, and oral argument by *Mr. H. A. Cooper* and *Mr. Simmons.* They argued, among other things, that the general rule that where an article is manufactured and sold for a specific purpose the law implies a warranty that it is reasonably fit for that purpose, is based on the trust which the buyer necessarily places in the skill and judgment of the manufacturer or upon his supposed greater knowledge in respect to the process of manufacture or method of production. Manifestly that rule has no application to this case, because the reasons upon which it rests are wanting, where the circumstances disclose that the purchaser acted upon his own judgment and did not rely upon the supposed greater knowledge and superior judgment of the vendor. Where a known, described, and defined article is ordered of a manufacturer, although it is required for a particular purpose, still, if the known, described, and defined article be actually supplied, there is no warranty that it shall answer the purpose of the buyer. *Chanter v. Hopkins,* 4 Mees. & W. 399; *Ollivant v. Bayley,* 5 Q. B. 288; *Prideaux v. Bunnett,* 87 Eng. C. L. 613; 1 Parsons, Cont. 587, 588, note; *Mason v. Chappell,* 15 Grat. 572; *Hyatt v. Boyle,* 25 Am. Dec. 276; *Cosgrove v. Bennett,* 32 Minn. 371; *Goulds v. Brophy,* 42 id. 109; *Seitz v. Brewers' R. M. Co.* 141 U. S. 510; *District of Columbia v. Clephane,* 110 id. 212; *Walker v. Pue,* 57 Md. 155; *Wisconsin R. P. B. Co. v. Hood,* 54 Minn. 543; *Gerst v. Jones & Co.* 32 Grat. 518; *Wilson v. Lawrence,* 139 Mass. 318. Likewise where the purchaser knows or assumes to know what he wants, and selects it after examination or testing, or where he himself prepares the specifications for the article to be manufactured, no warranty of fitness for the intended use will be implied. *Hoe v. Sanborn,* 21 N. Y. 562, 563; *Milwaukee B. Co. v. Duncan,* 87 Wis. 120, and cases cited; *Rodgers & Co. v. Niles & Co.* 11 Ohio St. 48, 78 Am. Dec. 290. See, also *Schoneberger v. McEwen,* 15 Ill. App. 496; *Port Carbon I. Co. v. Groves,* 68

Pa. St. 149; *Tilton Safe Co. v. Tisdale*, 48 Vt. 83; *Ricketts v. Sisson*, 9 Dana (Ky.), 358, 35 Am. Dec. 141; *Berthold v. Seevers Mfg. Co.* 56 N. W. Rep. 669; *Cunningham v. Hall*, 4 Allen, 268; 10 Am. & Eng. Ency. of Law, 146, and note 1. The contract between the parties was put in writing, and in it are contained certain express warranties as to the quality of the wheels. Where such is the case, no further warranty will be implied by law. 10 Am. & Eng. Ency. of Law, 145, note 1 and cases cited; id. 151, and cases cited; *Lanier v. Auld*, 3 Am. Dec. 680; *Whitmore v. South Boston I. Co.* 2 Allen, 52; *Milwaukee B. Co. v. Duncan*, 87 Wis. 120. See, also, *McGraw v. Fletcher*, 35 Mich. 104; *Willard v. Stevens*, 24 N. H. 271; *Deming v. Foster*, 42 id. 165; *Gill v. Kaufman*, 16 Kan. 571; *Ramming v. Caldwell*, 43 Ill. App. 175; *Goulds v. Brophy*, 42 Minn. 109; *Reed v. Wood*, 9 Vt. 285; *Shepherd v. Gilroy*, 46 Iowa, 193; *Mullain v. Thomas*, 43 Conn. 252; *Conant v. National State Bank*, 121 Ind. 323; Story, Sales, §§ 352, 353, 358; 1 Parsons, Cont. 589. The testimony offered for the purpose of showing an express oral warranty of its wheels by the defendant in respect to the plan of construction, and a breach of such warranty, was inadmissible for the reason that there was a formal written contract between the parties, complete in itself and containing certain specific warranties as to quality. Where there is a contract in writing with express warranty as to quality, it is not permitted to prove an additional express warranty of the same class by parol. *Lanier v. Auld*, 3 Am. Dec. 680; *Whitmore v. South Boston I. Co.* 2 Allen, 52; *Jolliffe v. Collins*, 21 Mo. 338; *Nichols, S. & Co. v. Wyman*, 71 Iowa, 160; *Conant v. Nat. State Bank*, 121 Ind. 323; *M. Rumely & Co. v. Emmons*, 85 Mich. 511; *Seitz v. Brewers' R. M. Co.* 141 U. S. 510; *De Witt v. Berry*, 134 id. 312; *Warbasse v. Card*, 74 Iowa, 306; *Cooper v. Cleghorn*, 50 Wis. 113; *Schultz v. Coon*, 51 id. 416; *Wiener v. Whipple*, 53 id. 298, 303; *McQuaid v. Ross*, 77 id. 470; *Milwaukee B. Co. v. Duncan*, 87 id. 120.

The following opinion was filed June 20, 1895:

PINNEY, J. The finding of the court proceeds in part upon the basis of an implied warranty that the wheels were suitable for the purpose for which the plaintiff desired them, namely, "for our season's wants," it being engaged in manufacturing plows, cultivators, etc., intending to attach them to such implements, with which it was supplying the trade; and in part on the basis of the written warranty "against defects in material and workmanship," the defendants having used common iron in the manufacture of the spokes, and that the wheels were defective in material, and were not fit and proper for the uses and purposes for which they were desired. The plaintiff's damages were assessed at the gross sum of $4,655.54, but how much for defective materials, or how much upon the breach of the alleged implied warranty, it is impossible to say, nor does it appear upon what number of wheels the assessment was made; so that, in the view we have taken of the rights of the parties, judgment cannot be given on the finding, and a new trial becomes necessary.

1. The wheels were made specially for the plaintiff, and it specified the sizes, dimensions, and material, and had looked over and examined wheels of that kind manufactured by the defendant, which had been tested in the presence of the plaintiff's representatives as to their quality and strength, before signing the contract. In the absence of any written or oral warranty, it seems to be quite well established that in such a case as the present no warranty of the suitableness of the wheels for the purpose desired can be implied. The purchaser, in such case, takes the risk of the fitness of the wheels for their intended use; and although it was stated that they were required for a particular purpose, if the known, defined, and described kind of wheels was actually supplied, there was no implied warranty that they would answer the particular purpose intended by the purchaser,

although intended and expected to do so. This is made clear
in Leake, Cont. 404. The contract was not for the manu-
facture of wheels generally to satisfy a required purpose,
but for the manufacture and delivery of a specific kind or
plan of wheels, of specified dimensions and sizes. This was
the essential matter of the contract. *Milwaukee Boiler Co.
v. Duncan*, 87 Wis. 120, 124; *Chanter v. Hopkins*, 4 Mees. &
W. 399; *Ollivant v. Bayley*, 5 Q. B. 288; *Jones v. Just*, L. R.
3 Q. B. 197, 202; *Goulds v. Brophy*, 42 Minn. 109; *Seitz v.
Brewers' R. M. Co.* 141 U. S. 518; *Deming v. Foster*, 42
N. H. 165. Where, however, a manufacturer or dealer con-
tracts to supply an article which he manufactures or pro-
duces, or in which he deals, to be applied to a particular
purpose, so that the buyer necessarily trusts to the judgment
or skill of the manufacturer or dealer, there is in that case
an implied warranty that it shall be reasonably fit for the
purpose for which it is to be applied. Benj. Sales (6th ed.),
§ 657; *Jones v. Just, supra.* The test in such cases is whether
the purchaser trusts and relies upon the judgment of the
manufacturer, and not upon his own. *Brown v. Edgington*,
2 Man. & G. 279; *McQuaid v. Ross*, 85 Wis. 494, 496. This
case, we think, falls within the rule first stated, and that
there was no implied warranty of suitableness of the par-
ticular kinds of wheels, with specified sizes and dimensions,
required by the plaintiff.

2. It is insisted, however, that the plaintiff relied upon
the representations made by the defendant's agent as to the
plan or method of construction, and, in particular, the man-
ner of securing the spokes in the hubs of the wheels; but
these representations preceded the execution of the written
contract, and the plaintiff took a limited warranty, incorpo-
rated in the written contract, in respect to material and
workmanship, going to and covering in part the *suitableness*
of the wheels for the purpose for which the plaintiff desired
them. Where an article is sold by a formal written con-

tract, which is silent on the subject of warranty, no express or oral warranty made at the same time or previously can be shown, nor can any additional oral warranty be ingrafted upon or added to one that is written, as the written instru-. ment is conclusively presumed to embody the entire contract. *Merriam v. Field*, 24 Wis. 640; *McQuaid v. Ross*, 77 Wis. 470; *De Witt v. Berry*, 134 U. S. 312. The rule on this subject is too firmly settled to require discussion or the citation of other authorities. Evidence to show an express oral warranty of the wheels, made previous to the written contract, was therefore clearly incompetent.

3. The contention of the plaintiff that it was not precluded by the warranties in the written contract from insisting upon an implied warranty that the wheels should be suitable for the purposes for which they were required, for reasons in addition to those already stated cannot, we think, be sustained. The fact that the limited warranties going to the question of suitableness of the wheels were expressed in the contract, by the strongest implication excludes and negatives the idea that it was intended that other or more comprehensive warranties should exist, and repels any implication of law to that effect. The contract as written must be taken as the final and conclusive evidence of all that was intended or agreed upon. The familiar rule, "*Expressio unius est exclusio alterius*," clearly applies. The demand of the purchaser for certain specified warranties indicates that no others were intended or expected. Had the parties intended that there should be an implied warranty, there was no occasion to make any stipulation on the subject. The one introduced must be taken as covering the entire subject; otherwise it would be idle and unmeaning. Adjudicated cases on this point are numerous and conclusive. We have not been referred to any decision expressly on the point to the contrary. *Dickson v. Zizinia*, 10 C. B. 602; *Chanter v. Hopkins*, 4 Mees. & W. 399; *Baldwin v. Van Deusen*, 37

N. Y. 487; *De Witt v. Berry*, 134 U. S. 313; *Carleton v. Lombard, Ayres & Co.* 72 Hun, 254; *Whitmore v. S. B. I. Co.* 2 Allen, 58; *Deming v. Foster*, 42 N. H. 165; *Budd v. Fairmaner*, 8 Bing. 52; *Shepherd v. Gilroy*, 46 Iowa, 193.

The case of *Merriam v. Field*, 24 Wis. 640, was relied on as establishing a contrary view. In that case there was an express warranty of *title* in the bill of sale, but it was held that facts might be shown from which an implied warranty of *quality* would arise. Between these two subjects there was no dependent connection, but each stood by itself. There was not, as in this case, any qualified or restricted warranty upon the question of *quality* or *suitableness*, and the case was ruled on the authority of *Bigge v. Parkinson*, 7 Hurl. & N. 955, where the warranty, as in *Merriam v. Field*, was on a separate and independent subject, namely, that the goods would pass inspection, and it was held that an express written warranty on that subject would not preclude an implied one that the goods were in fact fit for the purpose intended. The case of *Boothby v. Scales*, 27 Wis. 626, was also referred to, but in this case there was no express warranty by written contract, and it was held that an implied warranty of suitableness might exist, although a handbill had been delivered at the time of the sale and the agent of the vendor affirmed of the fanning mill that it possessed the capacities therein set forth. There was no written warranty on any subject, and the particular point litigated was that the agent making the oral affirmation had no authority to warrant the mill. The case, therefore, is no authority upon the point under consideration. As already stated, the plaintiff having specified the sizes and dimensions and materials of the particular plan or kind of wheel it desired, and its agents having looked over and examined wheels of that kind, manufactured by the vendor, which had been tested in their presence as to their quality and strength, the conclusion seems irresistible that, subject to defects in material and workmanship, the

case falls within that of *Milwaukee Boiler Co. v. Duncan,*
87 Wis. 122, and the plaintiff must be held to have obtained
that for which it contracted, subject to such remedy as it
may be entitled to on the warranties against defective mate-
rial and workmanship. And, in this connection, it is proper
to observe that a defect in the plan of the wheels is not a
defect of workmanship, for workmanship has only to do with
the execution of the plan, and it follows that the objection
much relied on, that the plan for the wheels was defective
and impracticable, is not covered by the written warranties.
The plan relates to the question of suitableness of the wheels
for the purpose for which they were purchased, in relation
to which, for reasons already stated, we hold that there was
no implied warranty.

4. It is impossible to determine from the general terms of
the finding upon what theory or basis the plaintiff's dam-
ages were assessed. The proper measure of damages was
the difference between the actual value of the defective
wheels delivered, and their value had they been in accord-
ance with the written warranties, and the price paid, or
agreed to be paid, for them was competent evidence of the
latter value (*Giffert v. West,* 33 Wis. 617; *Merrill v. Night-
ingale,* 39 Wis. 247; *Aultman & Taylor Co. v. Hetherington,*
42 Wis. 622; *C. Aultman & Co. v. Case,* 68 Wis. 612), to
which may be added compensation for the trouble and ex-
pense suffered, and other special damages incurred, in con-
sequence of the wheels not being in conformity with the
contract (Suth. Dam. (2d ed.), §§ 670, 671; *Fisk v. Tank,* 12
Wis. 306; *Dushane v. Benedict,* 120 U. S. 630). The price
for which the purchaser had sold the goods cannot be shown
in order to modify the rule above stated, nor is it material
whether he had sold them at all. *Muller v. Eno,* 14 N. Y. 597;
*Medbury v. Watson,* 6 Met. 246; *Brown v. Bigelow,* 10 Allen,
242; *Jones v. Just,* L. R. 3 Q. B. 197; *Bach v. Levy,* 101 N. Y.
511, 515. The court refused to allow the plaintiff dam-

ages on account of defective wheels which it had sold and disposed of to third parties, and for which it had received an amount equal to the purchase price of the same. Within the well-settled rule established by the cases cited, this was error prejudicial to the plaintiff, for which it is entitled, on its appeal, to a reversal of the judgment and a new trial.

5. It was optional with the plaintiff to have certain of the specified wheels made with eight steel or ten iron spokes, and it insisted, in the main, on having them made with ten iron spokes. It is claimed as a serious defect in the wheels that common iron was used for that purpose. There is evidence that the defendant figured on using common iron, but not that this fact was communicated to the plaintiff, or that any particular kind or grade of iron was discussed or agreed on. The evidence tends to show that refined iron ought to have been used. The stipulation against defective material is substantially an agreement that material not suited to the purpose should not be used, and required that the iron for the spokes should be of the necessary grade and quality, if there was any such procurable in the market. The defendant could not comply with the contract by using a cheap and inferior kind of iron, unfit to be used in the manufacture of such wheels.

6. In view of the facts presented by the record, and the contentions of counsel on the question of damages, it is proper to add that the difficulty in assessing damages arises mainly out of the nature of the proof offered to show how many wheels were defective for want of conformity to the warranties in the contract, rather than out of any uncertainty as to the rule of damages. The fact that certain wheels were defective in these respects, the number of them, and the proper amount of damages, must be established by competent and satisfactory evidence. *Meagley v. Hoyt*, 125 N. Y. 771; *Leeds v. Metropolitan G. L. Co.* 90 N. Y. 26; *Houghkirk v. D. & H. C. Co.* 92 N. Y. 218, 225. It cannot

be necessarily or fairly inferred that all the wheels were defective because quite a large number of them have been found to be so. It appears that out of nearly 14,000 shipped to agents as sold and to be sold, 3,556 had been returned as defective, and 400, alleged to be so, remained in the hands of agents after notice had been given to agents and others, for a period of four months or more, inviting the return of all wheels claimed to be defective. This does not, in connection with the other evidence, justify the inference that wheels not so returned or held were defective, but tends, at least, to show that they were not. As already stated, the plaintiff must prove how many and what wheels were defective, by competent and satisfactory evidence. This cannot be established by mere conjecture or guesswork. As the findings of the court on the subject of implied warranty are erroneous, and are so vague and uncertain that they cannot be corrected but by a new trial, the defendant is also entitled to a reversal of the judgment on its appeal.

*By the Court.*— The judgment of the circuit court is reversed on each of the appeals, with costs, and the cause is remanded for a new trial.

A motion by the defendant for a rehearing was denied September 26, 1895.