Kirkpatrick, Appellant, vs. Kepler and others, Respondents.

*November 17, 1916—January 16, 1917.*

*Sales: Express and implied warranties: Bond to protect buyer against claims.*

1. In a bond given by the sellers of cheese to protect the buyer against claims of third persons, recitals as to an agreement made by said buyer with "all persons interested in the ownership of said cheese" that he would purchase the same if said persons would indemnify him against any judgment recovered by any other claimant, together with the fact that the sellers received from him the full market and purchase price of the cheese, are *held* to constitute an affirmation and an express warranty of ownership, under sec. 1684*t*—12, Stats.

2. There being nothing in the circumstances of the sale itself or in the language of the bond to indicate a contrary intention, there was, under sub. (1), sec. 1684*t*—13, Stats., an implied warranty of right to sell the cheese, even though it was not at the time in the possession of the sellers.

3. The very purpose of the bond being to secure the buyer against the claims of certain persons known to both parties, it cannot be construed as showing any "contrary intention" to an implied warranty, and the sellers are not relieved from liability by sub. (3), sec. 1684*t*—13, Stats.

4. The agreement for the sale itself being oral and separate and distinct from the bond, the rule is not applicable that where there is a written contract of sale with an express warranty, other than such warranty as the law implies, no other or different warranty can be proven by parol.

Winslow, C. J., dissents.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

The appeal is from a judgment in favor of defendants dismissing plaintiff's complaint.

The plaintiff is a dealer in cheese in Richland Center, and on September 1, 1913, paid the defendants *A. L. Kepler, A. H. Ray, C. H. Babb, L. C. Brown, James Draper, Fred McMillan, E. E. Kepler, S. Roudebush, William Wanless,* and *J. E. Davis* $690.27 for eighty-three boxes of cheese at the then market price. These named defendants had been patrons of a cheese factory in Richland Center owned by one Walker, for whose estate the defendant *Christie Walker* was administratrix. These eighty-three boxes of cheese had been delivered on June 20, 1913, to one H. J. Bamford at his cold-storage warehouse in Richland Center under an arrangement for selling the same. On June 23d and 27th Bamford gave two warehouse receipts for this cheese to the First National Bank of Richland Center for his then indebtedness to said bank. Shortly thereafter Bamford was adjudicated a bankrupt and appears to have made a composition with his creditors, in which composition none of the defendants appear to have participated.

After the bankruptcy of Bamford the said bank, which owned the storage warehouse occupied by Bamford, leased the same to plaintiff, who, on August 8th, gave a warehouse receipt to the bank for all the cheese he found in said warehouse on taking possession, which included the eighty-three boxes in question here. This warehouse receipt was not given on account of any obligation owing to the bank by plaintiff.

Shortly before the plaintiff paid the defendants for this cheese he talked with their attorney and then with some of the defendants about the purchase, and as a result of such conversations an instrument was drawn by defendants' attorney and submitted by the plaintiff to his attorney and which was signed by all the defendants other than *Walker,*

and delivered to plaintiff, and which is in substance as follows:

"Know all men by these presents: That whereas the undersigned patrons of a cheese factory known as the Walker Factory . . . and Frank E. Walker, manufacturer of cheese at such factory, delivered to a cold-storage building in Richland Center, in said county, on and between the 16th day of June, 1913, and the 30th day of June, 1913, 117 boxes of cheese . . . , which said cold storage was at the time of first delivery of said cheese managed and operated by one H. J. Bamford; and whereas the said H. J. Bamford has since said time been adjudicated a bankrupt . . . , and whereas said Bamford has secured a composition in said court, and whereas a question of title has arisen as to such cheese, the First National Bank of the city of Richland Center claiming to hold warehouse receipts on the whole or a part thereof. And whereas *John Kirkpatrick,* of the city of Richland Center, has leased such warehouse cold storage containing said cheese, . . . and whereas it is deemed to be the best advantage of all persons interested that such cheese remaining in said warehouse be sold and disposed of at the best market price, and whereas, the said *John Kirkpatrick* has entered into an agreement with all persons interested in the ownership of said cheese to purchase the same at a price to be fixed between himself and said parties on condition that those interested as owners thereof will indemnify him against all or any judgment that may be entered against him in case any person, partnership, or corporation shall make claim therefor:

"Now, therefore, the undersigned [defendants named] and Frank E. Walker, manufacturer, having a special interest in said cheese for the amount due him for making the same, hereby acknowledged themselves to be indebted to the said *John Kirkpatrick,* his heirs and administrators or assigns, in the penal sum of two thousand dollars . . . for the payment of which we bind ourselves, our heirs, executors and administrators firmly by these presents.

"Sealed with our seals and dated this 1st day of September, 1913.

"The condition of this bond is such that whereas upon the

facts hereinbefore stated and the execution and delivery of this bond to said *John Kirkpatrick,* has purchased such cheese,

"Now, therefore, if the said *John Kirkpatrick* shall be saved harmless and indemnified against all costs and damages that may be awarded against him in any court having jurisdiction upon any action brought by any person, firm, or corporation claiming an interest in said cheese, provided that if any action shall be begun against him, or in which he may be made a party, he will promptly notify the said bondsmen or Burnham & Black of Richland Center, Wisconsin, as their attorneys, tendering to them the defense of said action and permitting them and the signers of this bond to defend said action at their own expense, the signers to this bond will pay any and every judgment that may be entered up against him by any court having jurisdiction thereof with costs growing out of said action to be defended by the signers of said bond, then this obligation shall be void; otherwise to remain in full force to the amount said *John Kirkpatrick* may sustain."

Shortly thereafter the bank, in the absence of plaintiff and without his consent, took possession of the cheese in question without any legal process and claiming the right to do so under the three warehouse receipts above specified, and thereafter disposed of the cheese.

An action was brought by plaintiff against the bank in connection with this transaction and defendants were brought into that action, but it was dismissed by plaintiff and this action instituted.

The complaint herein alleged that the defendants offered to sell this cheese and warranted it to be the property of the defendants; that plaintiff relied on the warranty and purchased and paid for it; that it was then the property of Bamford and was subsequently taken by the bank as recited.

The answer of the defendant *Christie Walker* recited her appointment as administratrix of the estate of Frank Walker, deceased; that proceedings were had in the probate court

whereby a time was limited for creditors to file claims; that the time had expired; that no claim by plaintiff had been filed in the estate, and that the same was therefore barred.

The answer of the other defendants in substance set forth that they offered to sell to the plaintiff the cheese, but specifically deny that there was any warranty that the cheese was the property of the defendants. They admit that the plaintiff purchased the cheese as stated in the complaint and paid for the same. They then recite the arrangement with Walker for the manufacture of the cheese and the delivery of the same to Bamford subject to a sale to him when the same had been inspected and a price agreed upon, but allege that before such sale was consummated Bamford was adjudicated a bankrupt and that his trustee claimed title to said cheese, but that the defendants refused to recognize said claim and filed no claim in such bankruptcy proceedings; that before the sale to plaintiff he stated that he would take such cheese if defendants would guarantee title thereto, he fearing suit would be brought against him for converting the cheese on account of the alleged transactions with Bamford and the giving by Bamford to the bank of the warehouse receipts, and if the defendants would execute and deliver to the plaintiff a bond signed by themselves, conditioned that in the event of an action being brought by any person, firm, or corporation claiming an interest in said cheese against the plaintiff, or in which he might be made a party, the signers of the bond would pay every judgment that would be entered up against him with the costs, provided that he gave notice to defendants or their attorneys and tendered the defense of the action to them,—this being the same bond recited in the statement of facts. They further allege that the plaintiff had full knowledge of all the facts concerning the delivery of the cheese at the warehouse, the manner in which it was received, and the claim of the trustee, but withheld from them the fact that he had given the warehouse receipt to the bank. It also

recites that, after the taking of the cheese by the bank, plaintiff was informed by defendants' attorneys that he should bring an action for replevin and that such attorneys would carry it on without costs to him and the defendants would pay the costs, but that instead of so doing the plaintiff himself commenced an action for conversion against the bank without tendering to defendants the right to bring that action, to which action the defendants were made parties, and its subsequent dismissal.

Upon the trial the following special verdict was found by the jury:

"(1) At the time of the sale of this cheese to the plaintiff, had title thereto passed from defendants to Mr. Bamford? A. Yes.

"(2) At the time of the sale of this cheese to plaintiff, was there any warranty as to the title of this cheese other than that contained in the bond signed by them? A. No.

"(3) Was it the intention of the defendants that there should be a warranty of title outside of the bond? A. No."

After several motions by the respective parties after verdict the court directed a judgment for defendants upon the verdict, and from the judgment so entered plaintiff appeals.

For the appellant there was a brief by *L. H. Bancroft*, attorney, and *Gilbert & Ela*, of counsel, and oral argument by *Mr. F. L. Gilbert* and *Mr. Bancroft*.

For the respondents there was a brief signed by *Burnham & Black*, attorneys, and *Jones & Schubring*, of counsel, and oral argument by *Burr W. Jones* and *O. D. Black*.

Eschweiler, J. The plaintiff seeks to recover the amount he paid to the defendants for the eighty-three boxes of cheese on the theory that there was a failure of consideration and a breach of warranty of title.

For the purposes of this case it may be considered that a warranty may have been given by the defendants in one or

more of three ways: first, by an express oral warranty; second, by an affirmation of title to be found in the language of the undertaking given by the defendants, under sec. 1684t—12, Stats.; third, an implied warranty under the provisions of sec. 1684t—13, Stats. The first of these has been disposed of adversely to the plaintiff by the jury in their answers to the second and third questions in the special verdict, the court charging them that they were to determine in these two questions whether defendants made any warranty by word of mouth, and that was to be determined by the evidence outside of what was contained in the bond, and that the effect of the bond upon the rights of the parties was a question for the court. These two questions, therefore, have no bearing upon the second and third ways stated above in which defendants could be bound by a warranty of title.

Under sec. 1684t—12 any affirmation of fact by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods and if the buyer purchases the goods relying thereon. The trial court evidently construed this undertaking as having no such statement of affirmation of fact as is specified in the preceding section of the statute. There is language from the undertaking considered as a whole from which it might reasonably be construed that the defendants positively asserted ownership of this cheese in themselves, viz. the recitals concerning "all persons interested in the ownership of said cheese" taken in connection with the pretty positive mark of identification as to who such persons were, shown from the conceded fact that the defendants got the full market and purchase price. If the allegations of the bond are indefinite or ambiguous, the fact of taking the purchase price, to which of course they had no shadow of right unless they had asserted some kind of ownership in the cheese, renders the language used a clear and definite assertion of owner-

ship sufficient to meet the call of the statute.    The plaintiff testified that he relied upon defendants' warranty in making the purchase.    The testimony, however, being indefinite and uncertain as to what particular form of express warranty was meant by plaintiff, and the jury having negatived the making of any oral warranty, we do not dispose of the case upon this phase of it.

By sub. (1), sec. 1684$t$—13, it is provided that in a contract of sale, unless a contrary intention appears, there is an implied warranty on the part of the seller that he has a right to sell the goods.    By the third subdivision of the same section there is an implied warranty that the goods shall be free at the time of the sale from any charge or incumbrance in favor of any third person not declared or known to the buyer before or at the time when the sale is made.

The general rule is well established that there is an implied warranty of title in a sale of chattels in possession of the seller for a fair price where a contrary intention is not shown from the surrounding circumstances.    *Edgerton v. Michels,* 66 Wis. 124, 131, 132, 26 N. W. 748, 28 N. W. 408; *Shores L. Co. v. Claney,* 102 Wis. 235, 239, 78 N. W. 451; 35 Cyc. 394.    By sec. 1684$t$—13 no such condition of possession by the vendor at the time of sale is required, so that that does not affect the application of the rule of the statute and the decisions to this case.

Under the pleadings and testimony it is safe to assume that the agreement to sell was oral and was consummated by plaintiff paying the agreed price to defendants.    There is nothing, therefore, shown as to the sale itself and nothing could be reasonably construed from the language of the bond indicating "a contrary intention" to the implied warranty of right to sell the goods fixed by sub. (1), sec. 1684$t$—13.

The bond in question is evidently not the agreement to sell itself, first, because it does not state the price nor the terms

of the sale, and second, because from its language it evidently refers to some other agreement for sale than any embodied in its own terms.

The defendants cannot be relieved from liability by the third subsection of sec. 1684*t*—13, quoted above, for it is manifest that the intent of the bond was for the very purpose of securing plaintiff against the claims of Bamford or the First National Bank, and it cannot, therefore, be construed as showing any "contrary intention" to the implied warranty.

That the condition of the bond was not drawn to meet the happening of the unexpected, namely, that the cheese would be taken by the bank without resorting to legal process, so that the action to be brought would have to be begun by plaintiff instead of defended by him, could not now make that document spell out a meaning which would be exactly contrary to its evident meaning at the time it was executed.

The allegations in the answer that defendants' attorneys informed plaintiff that he ought to bring replevin for the cheese, and that if they, defendants' attorneys, were permitted to carry on such action it would be without cost to plaintiff, and the testimony of defendants' attorney on the trial to the same effect, shows the practical construction put by the parties on the evident intent and meaning of the bond, viz. that it was to secure plaintiff against claims, in whatever form made, that were contrary to defendants' assertion of ownership.

The contract for the sale itself being separate and distinct from the bond, there is no room for the application of the rule in the cases relied upon by respondents that where there is a written contract of such sale with an express warranty, *other than such warranty as the law implies,* no other or different warranty can be proven by parol. *McQuaid v. Ross,* 77 Wis. 470, 473, 46 N. W. 892; *J. I. Case P. Works v. Niles & Scott Co.* 90 Wis. 590, 604, 63 N. W. 1013.

The question in this case really is whether plaintiff, when he paid the defendants full market price, purchased cheese

or a lawsuit. If he bought the cheese, there was by law an implied warranty of right to sell in the vendors; if it was intended by the parties that he was to purchase all the possibilities of a lawsuit, then the bond was inconsistent with such purpose. If the purpose of the bond was to limit the form of the lawsuit which defendants undertook to assume the care and expense of, then such limitation in no wise contradicts the implied warranty of title under the statute, and questions concerning the same could only come up if suit were brought upon the bond.

The uncontradicted evidence shows that the warehouse receipt given by plaintiff to the bank at the time of the taking possession of the warehouse was without consideration and in no wise altered the respective positions of the parties to this action, except as it might affect the right to bring a suit on the bond; but, that not being before us, the giving of the receipt is entirely immaterial.

Under the record, no proof having been offered by plaintiff to controvert the allegations of the answer of the defendant *Christie Walker* as administratrix of the estate of Frank Walker, no judgment could be entered against her, and as to her the action must be dismissed with costs, and, except as to her, plaintiff's motion for judgment should have been granted against the other defendants.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint as to the defendant *Christie Walker* and to enter judgment in favor of plaintiff against the other defendants for the amount claimed.

WINSLOW, C. J. (*dissenting*). I confess that I cannot understand the reasoning upon which the decision is based. To me the evidence tells a very plain and simple story. The parties on both sides knew that there was a dispute as to the title of this cheese and that the bank claimed to own it. The plaintiff had in fact gone so far as to acknowledge the bank's title by giving a warehouse receipt therefor to the bank when

he took possession of the storehouse. So when the parties met to negotiate for the sale there was no misapprehension about the situation; the plaintiff knew that the defendants claimed title as the original manufacturers of the cheese, and that the bank claimed title through Bamford, in whose hands the defendants had placed it.

The subject as to what remedy the plaintiff should have in case the defendants' claim of title proved invalid was discussed, and it was finally agreed that the defendants should give the bond or undertaking set forth in the statement of facts. Had this bond been signed by sureties there would be logical ground for the conclusion that it was given to increase the plaintiff's security, but it was not. It was signed only by the parties who claimed to own the cheese. These parties would all be liable for the value of the cheese on their implied warranty had nothing been said about security, and this liability would not depend on the successful results of an action of replevin or trover. The liability on the bond, therefore, is a limited liability, considerably more restricted though included in the liability resulting from implied warranty of title.

It is a familiar legal principle that the giving of express limited warranties excludes and negatives the idea that more comprehensive warranties were intended "and repels any implication of law to that effect." *J. I. Case P. Works v. Niles & Scott Co.* 90 Wis. 590, 63 N. W. 1013. Hence there was no implied warranty here, because the "contrary intention appears," and in such cases the statute in express terms declares that there is no implied warranty. Sec. 1684t—13, Stats.

Furthermore, in the present case the jury found that the defendants did not intend that there should be any warranty outside of the bond. Perhaps the defendants' contrary intention alone would not be a "contrary intention" within the meaning of the statute, but if a contrary intention on the part of both plaintiff and defendants was necessary it must be as-

sumed under the statute (in support of the judgment) that the court found a contrary intention on the part of the plaintiff as well, no question covering this subject having been proposed for submission to the jury by either party.  Sec. 2858m, Stats.

So the result is that, even if it be held that the giving of the bond does not show the "contrary intention" required by the statute, but that such intention must be otherwise proven, in the present case it was otherwise proven and found by the verdict of the jury supplemented by the presumed finding of the court.